[No. 14898. Department Two. February 27, 1919.]

MARY DILLABOUGH, *Respondent*, v. OKANOGAN COUNTY, *Appellant*.[1]

APPEAL AND ERROR (451)—REVIEW—HARMLESS ERROR—ADMISSION OF EVIDENCE. Error in the admission of evidence in an action tried to the court is harmless.

SAME (432)—REVIEW—HARMLESS ERROR—PARTY NOT ENTITLED TO SUCCEED. Error in refusing requested findings is harmless, where the judgment was justified in any event.

HIGHWAYS (62, 67)—INJURIES FROM DEFECTS—NEGLIGENCE—EVIDENCE—SUFFICIENCY. A finding of negligence in the construction and maintenance of a culvert is sustained by evidence that engineers advised the county that the proposed culvert was too small to carry off the waters in times of freshets, and that the same was maintained for two years after such fact was demonstrated by washouts, without taking any steps to remedy the defect or warn the public.

SAME (65)—INJURIES FROM DEFECTS—CONTRIBUTORY NEGLIGENCE. It is not negligence *per se* for a traveler by auto stage to ride in an overloaded car over a muddy, slippery road, in high gear, even in the nighttime.

NEGLIGENCE (22-1)—IMPUTED NEGLIGENCE—DRIVER AND PASSENGER. The negligence of the driver of an auto stage in approaching an unsafe culvert over a slippery road, in high gear, cannot be imputed to a passenger.

HIGHWAYS (62)—INJURIES FROM DEFECTS—PROXIMATE CAUSE. The overloading of an auto stage is no defense to an action by a passenger for injuries sustained through the negligence of the driver in approaching an unsafe culvert, where it was not shown to be the proximate cause or that it contributed thereto.

[1]Reported in 178 Pac. 802.

20—105 WASH.

o

Appeal from a judgment of the superior court for Okanogan county, Neal, J., entered June 18, 1917, upon findings in favor of the plaintiff, in an action for personal injuries, sustained through a defect in a county road, tried to the court. Affirmed.

*Chas. A. Johnson, A. J. O'Connor,* and *Wm. C. Brown,* for appellant.

*P. D. Smith* and *W. C. Gresham,* for respondent.

FULLERTON, J.—The respondent, while a passenger in an automobile which was being driven over a public highway of the appellant county, received an injury, and brought this action against the county to recover in damages therefor. After issue joined, the action was tried by the court, sitting without a jury, and resulted in the entry of a judgment in the respondent's favor in the sum of $1,653. From the judgment so entered, the county appeals.

The facts necessary to an understanding of the questions involved, as we gather them from the evidence, are in substance these: The highway on which the injury occurred is the principal highway leading from the town of Okanogan to the town of Conconully, and is a much traveled way. At a point some one and one-half miles from Okanogan, it crosses a creek known as Salmon Creek. This creek is a torrential stream with precipitous banks, drains a large area of country, and at times, particularly in the spring and early summer, carries a considerable volume of water under normal conditions. It is also subject to periodical freshets, at which times the volume is greatly increased.

As a road crossing over the creek, the county constructed a culvert. They placed a corrugated pipe, some thirty feet long and forty-eight inches in diam-

eter in the bed of the stream and filled the remaining part of the channel for a width of about fifteen feet, up to a level with or perhaps slightly higher than the creek's banks, with earth, gravel and loose stone. The culvert was constructed in the latter part of the year 1913. Prior thereto, the government of the United States had constructed, higher up on the stream, a storage basin for irrigation purposes, which it filled during the freshet seasons with water that would naturally flow down the creek. This reservoir seems to have absorbed the surplus water of the stream for a year or so previous to the erection of the culvert. In the freshet season of 1914, it was made evident, however, that it would not do so at all times, and it was made evident, also, that the pipe was inadequate. During that season, the water backed up in front of the pipe on a number of occasions almost to the top of the banks of the creek, and on one occasion ran over the banks across the roadway and into the creek below the culvert, although the pipe was carrying water at the several times to its full capacity. The same thing happened in the freshet season of 1915. At that time, if not in 1914, the condition was called to the attention of the county officers and they were warned of the danger of the culvert being washed out. Indeed, the matter seems to have been a subject of discussion among them at one time, one of such officers, a deputy in the office of the county engineer, testifying:

"We talked about it; talked about the advisability of tearing it (the culvert) out and putting in another, putting in a larger one, but we came to the conclusion that it was just as well to let it stay there and the county could put in another one without the expense of tearing that one out; we said it was just a question of time when some flood would come along."

At about 9 o'clock in the evening of June 21, 1916, one Hubbard left Okanogan in an automobile to drive to Conconully. He was a mail carrier and carried the respondent as a passenger. The road leading from Okanogan to the crossing of the creek runs parallel to the course of the creek. As it approached the crossing, it made a rounding turn, so, that the lights of an automobile would not fall upon the crossing until the machine was almost directly upon it. The driver of the automobile testifies that he drove over the road at a moderate rate of speed and in a careful manner; that his automobile had chains upon the hind wheels; that its brake was in good condition and the lights thereon were burning brightly; that, as the automobile turned toward the culvert, it was discovered that it had partially washed out; that it was then too late to stop the automobile, although he made an effort so to do, and that the car was precipitated into the washout and turned over. It was at this place and from this circumstance that the respondent received the injuries for which she sues.

The evidence discloses, also, that the culvert had been in a dangerous situation for some weeks immediately prior to the time it actually washed out. The pipe had again proved inadequate to carry the water. The water had, a number of times, risen close to the top of the banks of the creek, and had at one time overflowed the banks and passed over the roadway. It was regarded as dangerous by the people residing near it and by those who, from necessity, were required to use it. The county officers were notified of the situation, and the road foreman had been giving it some special attention, keeping the intake of the pipe free from drift and other debris. The foreman was obliged to leave the place about a week before the

washout occurred and left the matter in charge of others, but just what these others did during his absence seems not to be disclosed by the evidence. No barriers or lights or other warning signs were placed at the crossing prior to the accident, although a witness living on the creek, near the place, becoming alarmed at the rapidly rising water, started there for the purpose of putting up a light and was on his way when the accident happened.

In her complaint, the respondent charged the county with negligence in two respects: Negligence in the original construction of the culvert, and negligence in allowing it to remain in its unsafe condition after they had knowledge thereof, without giving the public warning of such condition. To substantiate the first ground of negligence alleged, the respondent called civil engineers, who were permitted, over the objection of the appellant, to give their opinions as to the sufficiency of the structure to accomplish the purposes intended; whether it was a reasonably safe structure within the knowledge the county had at the time of its construction or might have acquired by reasonable inquiry; and what would have been a proper structure.

The first error assigned is on the ruling of the court admitting this testimony. But, while it is probable that the witnesses in certain instances were permitted to go beyond the rule, we find nothing in it that requires a new trial, or a rendition of a judgment for the other side. As we have stated, the action was tried by the court sitting without a jury. It is thus triable in this court *de novo*. (Rem. Code, § 1736.) The admission of inadmissible evidence in cases so tried is, therefore, not ground for a new trial. The appellate court can and will disregard the inadmissible evidence and try the issues submitted upon the evidence legiti-

mately in the record. If it finds that the judgment must rest upon evidence not admissible, it will reverse the judgment rendered and direct a judgment for the other party. On the other hand, if it finds that the evidence preponderates in favor of the judgment, after disregarding the inadmissible evidence, it will affirm the judgment. *Rohrer v. Snyder,* 29 Wash. 199, 69 Pac. 748. Indeed, we have admonished trial courts, in the trial of causes without a jury, to be ''liberal . . . in admitting evidence so that this court, in the event of an appeal, will on a trial *de novo,* have all material facts before it for consideration, and thus avoid the necessity of the cause being remanded for the admission of material evidence erroneously rejected.'' *Degginger v. Martin,* 48 Wash. 1, 92 Pac. 674.

This court will, of course, in a proper case, make allowances with respect to costs, where it can see that the record is overburdened with inadmissible evidence. But here no such question arises. The objectionable part of the record consists of isolated questions and answers almost negligible in this regard, and moreover no question is made with respect to costs.

Another contention is that the court erred in refusing to make certain findings of fact requested by the appellant. Without stopping to point them out, we agree with the appellant that a number of them were justified by the evidence, but we do not think them at all material. In other words, all that were justified by the evidence could have been found and still the judgment remain the same. It is not necessary that a trial court find every fact which the evidence warrants it in finding. It is sufficient if the findings cover all of the issues and support the judgment rendered. In this instance, the findings are thus broad and no necessity

exists for sending the cause back for further consideration.

The principal contention of the appellant is that the evidence does not justify the findings made and the judgment entered. In our opinion, the respondent sustained the burden of proof on each of the grounds of negligence set forth in the complaint. When the necessity for a road crossing over the creek at which the injury occurred arose, the officers of the county, having the construction of the crossing in charge, sought the opinion of engineers and others on the question whether or not the pipe proposed to be inserted would be sufficient to carry the waters of the stream. These, without exception, expressed the opinion that the contemplated opening would prove too small, some of them expressing the opinion that two pipes of the size contemplated would not afford any considerable margin of safety. The pipe was put in on the recommendation of the county engineer, who seems to have been alone in the opinion that it would carry the water in times of freshets. When, in addition to this, the turbulent nature of the stream, the size of the area drained by it, and the quantity of water that is sometimes wont to flow down it is considered, it would seem to be too much to say that due caution was exercised in the selection of the pipe through which the water must flow. It may be that the county officers were misled to some extent by the fact that the government reservoir had absorbed the surplus waters of the stream for the two or three years preceding the insertion of the culvert, but this hardly affords a reason for thinking it would continue to do so. That the government engineers who planned the reservoir did not so think is evidenced by the fact that elaborate spillways were provided for relief against excessive quantities of

water; and one of such engineers, when consulted with reference to the size of the pipe to be put in the culvert, advised a pipe in double the capacity of the one put in.

Again, we think the county was negligent after it had discovered that the pipe was insufficient to carry the water of the stream. It was demonstrated at least two years prior to the time that it actually washed out, that there was danger of its so doing, and within a few days preceding that time the county officers were warned of its then dangerous condition. Yet they took no steps either to correct the defect or to warn the users of the road to be on their guard for a possibly dangerous condition. The county owed to the traveling public one or the other of these duties. After it has knowledge that a particular place in a public highway is in imminent danger of becoming hazardous, it must take such steps as are necessary to warn against it. It cannot remain passive until the expected thing actually happens, and then claim immunity because it was without knowledge of the actual happening. *Wiltse v. Town of Tilden,* 77 Wis. 152, 46 N. W. 234; 13 R. C. L., p. 348, § 286; note to *Miller v. Detroit,* 16 Ann. Cas. 835.

It is contended that the respondent was guilty of contributory negligence. It is said that the automobile was overloaded; that the roads were muddy and slippery; that the respondent had been warned of the possibility of the culvert being out; that the automobile was running on high gear at the time of the accident; and that an opportunity was presented to discover that the culvert was out for some distance before it was reached. The evidence does disclose that the road was muddy and slippery in places, and that the automobile was being run on high gear when it

approached the washout. We cannot, however, think that either of these circumstances convicts the respondent of negligence. It is not negligence *per se* to ride in an automobile over a muddy and slippery road, even in the nighttime. The manner of running the car rested with the driver, and his faults cannot be rested upon the respondent, unless of course, his fault was the sole cause of the injury. *Beach v. Seattle,* 85 Wash. 379, 148 Pac. 39.

The other contentions have no support in the evidence. It was shown that there were six persons in the car, while its seating capacity was normally for five persons; but, aside from the fact that the circumstance does not prove an overloading, the overloading, if it existed, was not shown to be the cause of the accident, nor was it shown to have contributed thereto. The warning claimed to have been given was not made to the driver of the automobile, and was not of such a nature as to put the respondent on her guard. The claim that the washout ought to have been observed is founded on the claim that the automobile passed over a ridge some one hundred and thirty-five feet prior to reaching the culvert, from which point its lights would flash over the culvert. But, if this be true, the washout was not then in fact observed; and clearly, it was not negligence on the part of the respondent to fail to observe it. The respondent owed no duty to examine every part of the road before attempting to pass over it. She had the right to assume that it was in its normal condition, and reasonably safe for travel.

We find no reason for interfering with the judgment rendered, and it will stand affirmed.

MAIN, PARKER, and HOLCOMB, JJ., concur.