[No. 33331.　*En Banc.*　February 15, 1957.]

GEORGE ARGUS, *Respondent*, v. PETER KIEWIT SONS' COMPANY, *Appellant*.[1]

[1]Reported in 307 P. (2d) 261.

*Eggerman, Rosling & Williams, Joseph J. Lanza,* and *Paul C. Gibbs,* for appellant.

*Walthew, Oseran & Warner,* for respondent.

OTT, J.—September 6, 1953, Peter Kiewit Sons' Company, pursuant to a contract with the highway department of the state of Washington, was engaged in repair and maintenance work approximately one-half mile west of the summit of Snoqualmie Pass on U. S. highway No. 10. In performing this work, the main traveled portion of the highway was barricaded, and a gravel-surfaced detour constructed adjacent to the highway for a distance of approximately five hundred feet.

One approaching the detour from the west was confronted at varying intervals with the following warning road signs: At four hundred feet from the detour, "Speed 25 M. P. H."; at three hundred feet, "Detour Ahead"; at two hundred fifty feet, "Slow" and "No Passing"; at two hundred feet, "Loose Gravel"; at one hundred feet, "Keep to the Right." After the last sign, there were lighted flares (after dark) at fifty-foot intervals along the right edge of the detour for its entire length. The graveled detour left the concrete pavement at an angle of approximately thirty-five degrees and re-entered upon the pavement at the same angle.

On Sunday, September 6, 1953, at approximately eight-thirty p. m., George Argus was traveling on a motorcycle in an easterly direction along the five-hundred-foot graveled

detour. As he left the detour to return to the paved portion of the highway, the front wheel of his motorcycle struck a depression, or trough, three to four inches deep, between the edge of the pavement and the gravel. The impact threw him over the handlebars of the motorcycle. This action, which alleged negligence in the company's maintenance of the detour, was brought to recover damages for physical injuries and property damage.

The evidence established that the defendant corporation had kept an employee on duty for the entire day, who sprinkled the temporary graveled detour and kept it graded. The employee testified that he graded the area three times on the Sunday in question, the last time being at approximately six o'clock in the evening, and that, when he left the road, it was in as good condition "as it was humanly possible to get it." The resident engineer inspected the road every few hours. The last inspection was at seven o'clock p. m., at which time the engineer found the detour to be in a satisfactory condition.

Defendant's motions for nonsuit and for a directed verdict were denied. The jury returned a verdict in favor of the plaintiff. The trial court denied defendant's motions for judgment notwithstanding the verdict and for a new trial. Judgment was entered upon the verdict, and the defendant corporation has appealed.

The appellant, relying upon *Muskatell v. Queen City Constr. Co.*, 3 Wn. (2d) 200, 100 P. (2d) 380 (1940), contends that it is not liable for injuries received by motorists using the detour because, in maintaining the detour, it was acting pursuant to a written contract with the state highway department, and the work was performed in accordance with the department's plans and specifications. In the cited case, the court emphasized that nonliability presupposes the absence of negligence and said [p. 202]:

"The rule is that, where a city, acting within its general powers, contracts for improvement upon a street, and the work is done by a contractor in accordance with the plans and specifications furnished by the city, he is the agent of the city and is not liable for damages *in the absence of neg-*

*ligence in the performance of the work.* [Citing cases.]" (Italics ours.)

See *Palin v. General Constr. Co.,* 47 Wn. (2d) 246, 287 P. (2d) 325 (1955); 27 Am. Jur. 533, § 53; 69 A. L. R. 489, 493.

■ Whether there was negligence on the part of the corporation in the performance of the work under its contract presented a factual question to be determined by the jury.

Appellant next contends that, unless or until the contractor, in the exercise of due care, is shown to have had actual or constructive notice of the defect a sufficient length of time before the accident to have remedied the condition, there can be no liability.

■ The duty of the appellant contractor to use ordinary care in keeping the detour in a safe condition for proper travel involved the anticipation of defects that were the natural and ordinary result of use by vehicular traffic. Appellant could not remain passive until the defect or dangerous condition developed and an accident happened, and then avoid liability on the ground that it had no actual or constructive knowledge or notice of the specific defect or the dangerous condition. In the exercise of due care, it had a duty to anticipate the development of a dangerous condition and guard against it. In the proper exercise of due care, the appellant is chargeable with knowing what might reasonably be expected to happen. *Dillabough v. Okanogan County,* 105 Wash. 609, 178 Pac. 802 (1919); 25 Am. Jur. 738, § 446.

The court did not err in denying appellant's motion to dismiss upon the grounds urged.

Appellant assigns as error the court's instructions Nos. 2 and 13.

Instruction No. 2 is as follows:

"The court rules as a matter of law that the affirmative defense, wherein the defendant alleges contributory negligence on the part of the plaintiff with regard to speed and point of entry onto the paved portion of the highway, has not been established by the evidence, and I therefore withdraw same from your consideration."

The appellant pleaded contributory negligence in the following language:

"That if plaintff sustained any injuries or damage as alleged in his complaint, the same were solely and proximately caused or substantially contributed to by his own negligence in failing to exercise ordinary care under the circumstances then prevailing at the time and place in question, and in failing to follow the directional signs and warnings in place at said location with regard to speed and point of entry onto the paved portion of the highway from said detour."

The affirmative defense put in issue three alleged acts of negligence on the part of the respondent: (1) excessive speed, (2) failure to exercise ordinary care at the point of entry onto the paved portion of the highway, and (3) failure to heed the directional signs.

By instruction No. 2, the court determined, as a matter of law, that the appellant had not established two of the claimed acts of negligence on the part of respondent, which were (1) failure to exercise ordinary care, under the circumstances, with regard to speed, and (2) failure to exercise ordinary care at the point of entry onto the highway. In so doing, the court invaded the province of the jury. Whether the admitted speed of the driver of five to ten miles an hour was excessive, or whether the claim of such speed was impeached by the physical fact of the driver of the motorcycle being thrown over the handlebars and onto the paved portion of the highway, or whether the admitted speed was excessive for one operating a motorcycle (proceeding with due regard for his own safety), when approaching the pavement at a thirty-five degree angle from a loose gravel road, were questions of fact to be determined by the jury. There was evidence concerning the issue of respondent's speed upon which the minds of reasonable men could differ.

Secondly, by instruction No. 2, the court found, as a matter of law, that respondent had exercised due care in operating his motorcycle at the *point of entry* upon the pavement from the graveled detour. It was for the jury to determine whether, under the facts of this case, a motorcycle

operator, when cautioned that there was a detour and loose gravel ahead, in the exercise of due care for his own safety might reasonably expect to find a trough three to four inches deep at the point where the graveled detour abutted the concrete pavement.

The law relating to contributory negligence was submitted to the jury in instruction No. 8, but, the court having specifically taken consideration of two of the three alleged acts of contributory negligence from the jury, instruction No. 8 could relate only to the alleged failure of respondent to heed the directional signs and warnings.

It was prejudicial error to have given instruction No. 2.

Instruction No. 13 is as follows:

"You are instructed that the defendant as a contractor in charge of the work on the highway in question had the duty to maintain all detour areas in a reasonably safe condition for vehicular traffic. In so maintaining the detour areas the defendant must use such care as a reasonably prudent person would use under the same or similar circumstances.

"Under the law of this state 'vehicular traffic' includes all types of legally licensed vehicles, including motorcycles."

■ We have held that one charged with proper maintenance of a highway must maintain it in a reasonably safe condition for one who is operating a motor vehicle in a lawful manner *and exercising due care for his own safety under the circumstances then and there existing. Berglund v. Spokane County,* 4 Wn. (2d) 309, 313, 103 P. (2d) 355 (1940); *Owens v. Seattle, ante* p. 187, 191, 299 P. (2d) 560 (1956). Although a contractor is charged with maintaining a detour in a reasonably safe condition, his duty has been performed if the highway is in a reasonably safe condition for those using it in a lawful manner, and who are exercising due care for their own safety. In *Owens v. Seattle, supra,* at p. 184, we said:

"A municipality is not an insurer against accident nor a guarantor of the safety of travelers. It is, however, obligated to exercise ordinary care to keep its public ways in a reasonably safe condition *for persons using them in a proper manner and exercising due care for their own safety.* [Citing case.]" (Italics ours.)

Instruction No. 13 placed upon the contractor the duty "to maintain all detour areas in a reasonably safe condition for vehicular traffic." The instruction placed upon the contractor a greater duty to repair under these circumstances than our decisions require. A three to four inch rut might well be considered by a jury as not a reasonably safe condition for vehicular traffic generally, whereas a three to four inch rut might well be considered by a jury as a reasonably safe condition for vehicular traffic proceeding in a lawful manner, each vehicle being driven by one exercising due care for his own safety. It is the latter rule which has been adopted, establishing and limiting the extent of the contractor's duty to repair.

Instruction No. 13 improperly defined the contractor's duty with reference to maintenance. It was prejudicial error to have given the instruction in its quoted form.

Instructions Nos. 9 and 10 properly defined *respondent's duty* as a user of the highway. These instructions did not cure the improper statement of the law which attempted to define the extent of the *contractor's* duty with reference to maintenance and repair.

We have not discussed each of the assignments of error involving similar instructions. However, upon a new trial, the instructions given should conform with the views expressed herein.

We find no merit in appellant's remaining assignments of error.

For the reasons stated, the judgment is reversed and the cause remanded, with instructions to grant appellant's motion for a new trial.

HILL, C. J., DONWORTH, WEAVER, and FOSTER, JJ., concur.

FINLEY, J. (dissenting in part, but concurring specially in the result)—I agree with the majority that the trial judge was correct when he refused to instruct the jury that liability could not be imposed upon the defendant contractor unless (a) he had actual notice of the defect, or (b) it had existed for a sufficient length of time before the accident that he could have remedied the condition. The trial judge's

reaction to this problem when he denied defendant's motion for a directed verdict was as follows:

" . . . in this particular case, I think we have a different rule of law than would exist, we will say on the floor of a dance hall, or the floor of a restaurant, in that almost as a matter of law, and certainly as a matter of fact, this detour is not like the hard surface of a floor and not like the hard surface of a paved highway; and under the testimony and evidence which is undisputed, it needs to be filled in and scraped and rolled every few hours, because automobiles traveling over this crushed rock presses it down and causes it to become corrugated or, under the evidence, causes a trough constituting a hazard;  . . . I don't believe I am required to give an instruction to the jury that the defendant must have either actual or constructive notice of this defect. I believe, as a matter of law, the contractor *has both actual and constructive notice as to what is bound to happen.* . . ." (Italics mine.)

Defendant knew that, if the graveled detour was not properly maintained, constant wear from automobile tires during the heavy Labor Day week-end traffic would cause ridges and troughs. This is borne out by the testimony of Mr. Copeland, the job superintendent, who testified on cross-examination as follows:

"Q. . . . You did not anticipate as a road man that that nice packed and crushed rock, well maintained, in good condition, would maintain itself for days? A. We did not. Q. You knew it would not? A. That's right. Q. You knew that five to ten thousand cars a day would go through there? A. Yes. . . . Q. You knew that traffic would inevitably, unless something was done, would cause ridges, washboard and troughs? A. That is right; any gravel will do it."

The contractor was under a duty to observe ordinary care to maintain the detour in a condition which would be safe for public travel. This duty involved the anticipation of defects which would result from the natural and ordinary use of the detour by vehicular traffic. The contractor could not stand by passively until a defect or dangerous condition developed and an accident occurred, and thereafter escape liability because there had been no

actual or constructive knowledge or notice of the specific defect or the dangerous condition; *i.e.*, that the contractor did not foresee, and legally should not be held to the duty that he should have foreseen, the accident. *Dillabough v. Okanogan County*, 105 Wash. 609, 178 Pac. 802; 25 Am. Jur. 738, § 466.

If the detour had been left in a reasonably safe condition, considering anticipated traffic, and thereafter a dangerous defect or condition had resulted from some cause not reasonably related to the unfinished condition of the roadway, under our decisions the contractor would have been entitled to notice of the defect or dangerous condition as a prerequisite to liability based upon negligence. On the other hand, as indicated heretofore, if the defect was due to ordinary travel and the unfinished and imperfect condition in which the contractor left the roadway surface (which was the situation in the instant case), notice of the defect was not a condition precedent to a recovery by the plaintiff. *Jones v. City of Binghamton*, 190 N. Y. S. 542; *City of Phoenix v. Clem*, 28 Ariz. 315, 237 Pac. 168.

In *Smith v. Manning's, Inc.*, 13 Wn. (2d) 573, 126 P. (2d) 44; *Mathis v. H. S. Kress Co.*, 38 Wn. (2d) 845, 232 P. (2d) 921; *Hendrickson v. Brill*, 45 Wn. (2d) 766, 278 P. (2d) 315, and similar cases, the defective or dangerous conditions there involved were attributed to acts of third parties. Apparently, no act of the defendant contributed directly to the *creation* of the defect or dangerous condition. When, in such cases and under such circumstances, the law imposes liability, it is not because the defendant participated in the *creation* of the condition, but because he failed to exercise the due care required of a reasonably prudent person to *discover* the dangerous condition and to take reasonable precautions to *prevent harm* to others.

In determining whether a defendant exercised due care, the crucial questions are, (1) whether the defendant had actual notice of the defect or dangerous condition; (2) or, absent actual notice, whether the circumstances—with emphasis upon the factor of time—were such that the law will presume that the defendant had constructive notice, *i.e.*,

that defendant should have discovered the defect or dangerous condition; and in either event, (3) whether the defendant should have remedied the defect or dangerous condition, or should have taken other reasonable steps in the exercise of due care to warn or protect users of the premises.

I think the cases mentioned hereinbefore are significantly distinguishable from the instant case. In the latter instance, the appellant corporation constructed the detour and *was responsible* for maintaining it in a reasonably safe condition. Appellant knew the type of construction was temporary and that the surface of the detour was constructed of loose gravel. Its action or conduct in this respect cannot be entirely disassociated from the *creation* of the defect or dangerous condition. The acts of appellant, coupled with those of the traveling public who used the detour (and use of the detour certainly was foreseeable), contributed to the *creation* of the defect or the dangerous condition. Appellant knew, or should have known, what was reasonably bound to happen, and it was not entitled to an instruction upon notice.

In my best judgment, the evidence in the case at bar presented a question of fact to be determined by the jury, *i.e.,* whether the appellant exercised the requisite care owed to persons lawfully using the temporary gravel-surfaced roadway. This phase of the case was adequately covered by the trial court's instruction No. 13, which is a correct statement of the law. It reads as follows:

"You are instructed that the defendant as a contractor in charge of the work on the highway in question had the duty to maintain all detour areas in a reasonably safe condition for vehicular traffic. In so maintaining the detour areas the defendant must use such care as a reasonably prudent person would use under the same or similar circumstances.

"Under the law of this state 'vehicular traffic' includes all types of legally licensed vehicles, including motorcycles."

The criticism of instruction No. 13 by the majority—namely, that it failed to cover the correlative duty of the motorist to use due care for his own safety—seems to over-

look instructions Nos. 9 and 10, wherein plaintiff's duty as a motorist is correctly defined as follows:

*Instruction No. 9:* "If you find that plaintiff's injuries were proximately caused or contributed to by his failure, if any, to use reasonable care for his own safety, under the peculiar circumstances and conditions by which he was at the time confronted, in looking and seeing any ordinarily apparent condition prevailing at the time, or in failing to use that degree of care which a reasonably prudent person of ordinary intelligence would have exercised under like or similar circumstances, then your verdict must be in favor of defendant."

*Instruction No. 10:* "You are instructed that the rule that a traveler on a public highway open to the general public may assume that the highway is reasonably safe *for one exercising ordinary care for his own safety* is subject to some qualification. When a part of a highway is undergoing construction and this portion is barricaded off from the general public by appropriate signs, and that he is required to detour, a traveler thereon having knowledge that the highway is undergoing construction *has a duty to exercise a greater care for his own safety than if he were traveling on an open and completed highway. He must keep a constant lookout and vigilant caution for his own safety.*" (Italics mine.)

Finally, I cannot agree *in toto* with the views of the majority as to the meaning and effect of the trial court's instruction No. 2, which read as follows:

"The court rules as a matter of law that the affirmative defense, wherein the defendant alleges contributory negligence on the part of the plaintiff *with regard to speed and point of entry onto the paved portion of the highway,* has not been established by the evidence and I therefore withdraw same from your consideration." (Italics mine.)

This instruction referred to appellant's affirmative defense, which alleged:

"That if plaintiff sustained any injuries or damage as alleged in his complaint, the same were solely and proximately caused or substantially contributed to by his own negligence in failing to exercise ordinary care under the circumstances then prevailing at the time and place in question, *and* in failing to follow the directional signs and warnings in place at said *location with regard to speed and point*

of *entry* onto the paved portion of the highway from said detour." (Italics mine.) .

The appellant urges that instruction No. 2 is subject to two telling faults: (a) that it is inconsistent with instruction No. 4 (which instructed the jury that the burden was upon the defendant to prove the allegations of its affirmative defense of contributory negligence) and instructions Nos. 8 and 9 (which defined contributory negligence); (b) that it charged that there was no contributory negligence as a matter of law. Although the language used is perhaps inept, I am strongly of the opinion that instruction No. 2 did not withdraw the *entire question of contributory negligence from the jury.* This seems especially true when instruction No. 2 is read and considered together with the other instructions which mentioned the affirmative defense and defined contributory negligence.

I think the affirmative defense to which the instruction refers is actually in two parts, and not three, as suggested by the majority opinion: (1) plaintiff's "own negligence in failing to exercise ordinary care under the circumstances," and (2) "in failing to follow the directional signs and warnings in place at said location with regard to speed and point of entry . . . " As I see the matter, instruction No. 2 did nothing more than to withdraw from the jury's consideration the above indicated second portion of the affirmative defense.

The testimony in the record with reference to (a) speed, and (b) physical facts, was as follows:

"[*Argus*] Q. In what gear were you? A. Low gear. Q. What speed would that be, about? A. Just creeping; five to ten miles . . . Q. Did you flip over the handlebars? A. Right over the handlebar."

"[*Klein* (Cyclist following plaintiff at a distance of forty to fifty feet)] A. . . . all I could see of Mr. Argus was Mr. Argus going over the top of his vehicle."

"[*Donna May Vulliet* (Passenger on Klein's motorcycle)] Q. Where in the highway, from your observation, did he first light? A. Well, I would say it was right close in, about five feet from the edge of the pavement. . . . Q. How fast do you think he was going as he approached the pave-

ment? A. I would say 10 miles, or 15. Q. You think he was going 15 miles an hour? A. I would say not over that. . . ."

"[*Patrolman Barger*] A. I checked the motorcycle at the Summit Garage, and also as it laid on the pavement at the time. It was in low gear, and I also checked the motorcycle for skidding, and there was no appreciable sliding; I checked the motorcycle for damage, and there was some paint damage , and a broken headlight. Q. What did that indicate to you as to his speed? A. It indicated that his speed was very low."

On cross-examination, patrolman Barger testified that the motorcycle was six to twelve feet from where plaintiff was lying; that the motorcycle had not been moved, but that possibly the plaintiff had.

In *Adkisson v. Seattle*, 42 Wn. (2d) 676, 691, 258 P. (2d) 461, the court observed:

"*Trial courts should be hesitant in submitting to the jury the question of the rate of speed merely from a consideration of the physical facts alone. . . . If the trial judge, in the exercise of his discretion, feels that the jury could arrive at a decision (as distinguished from a mere guess or speculation) as to the rate of speed by a consideration of the physical facts, such as the amount of physical damage done, the distance a car travels after the impact, etc., then he should submit such issue to the jury.*" ·(Italics mine.)

On the basis of the evidence as to physical facts in the *Adkisson* case, the conclusion was reached therein that the trial court properly submitted the question of speed to the jury. In the instant case, the evidence regarding physical facts, standing alone, I think would not be reasonably convincing, and inferences therefrom by the jury relative to the matter of speed would constitute pure guesswork or speculation. However, in . addition, there was testimony (1) regarding the condition of the roadway and other circumstances prevailing at the time, and (2) testimony in substance that respondent's speed was between five and fifteen miles per hour. From the latter, the jury properly could have concluded that respondent's speed was fifteen miles per hour; and furthermore, that this was excessive

and constituted negligence under the conditions prevailing at the time.

Thus, I am inclined to agree with the majority that the trial court erred in withdrawing the question of respondent's speed from the jury in connection with the appellant's defense of contributory negligence. I cannot agree with the further analysis and objections of the majority respecting instruction No. 2. As pointed out and emphasized at some length hereinbefore, I agree with the majority that the question of notice in the case at bar is not controlled by the principle applied by the court in the decisions in *Smith v. Manning's, Inc., supra; Mathis v. H. S. Kress Co., supra; Hendrickson v. Brill, supra*. The *City of Phoenix* case, *supra*, and the *City of Binghamton* case, *supra*, afford a more convincing, reasonable and logical disposition of the question of notice. However, since I do agree with the majority that the trial court erred in withdrawing the question of speed from the jury, I must concur in the granting of a new trial.

SCHWELLENBACH and ROSELLINI, JJ., concur with FINLEY, J.

MALLERY, J. (dissenting)—A detour should not be governed by rules applicable to highways. Practical considerations often require the use of a detour in a condition unsuitable for a permanent highway. People using a detour have no right to expect its condition to conform to highway standards. The user of a detour assumes the risk incident to his mode of operating his vehicle and is aggrieved only if the condition of the detour is so inherently dangerous that it cannot be safely traversed by a degree of care commensurate with observable conditions.

No inherent danger existed in this case as a matter of law. The court should have dismissed the action.

I dissent.