[No. 13950-2-II.   Division Two.   August 6, 1992.]

DELORES J. WALKER, *Individually and as Executrix,* ET AL, *Appellants,* v. THE STATE OF WASHINGTON, ET AL, *Respondents.*

*Lembhard G. Howell* and *Lembhard G. Howell, P.S.,* for appellants.

*Steven D. Robinson, Steven V. Lundgren, Gregory C. Sisk,* and *Karr Tuttle Campbell; Duncan K. Fobes* and *Lee, Smart, Cook, Martin & Patterson, P.S., Inc.,* for respondents.

SEINFELD, J. — Robert Walker was killed when his semi truck left State Route 101 and plunged over an embankment. His widow, Delores Walker, brought a wrongful death action against those jurisdictions responsible for the design, construction, or maintenance of the highway. A jury found negligence on the part of the State, Clallam County and the Port of Port Angeles, but also found Mr. Walker 70 percent contributorily negligent. The judgment was reduced accordingly.[1]

On appeal, Mrs. Walker challenges several evidentiary rulings and jury instructions, seeking reversal and a remand for a new trial limited to the issue of contributory negligence. Although we agree that error in the jury instructions necessitates reversal and a new trial, we decline to limit a new trial to the issue of contributory negligence.

Robert Walker, a truck driver for Continental Baking Company, generally worked the night shift, traveling his Seattle to Port Angeles route via Interstate 5, State Route

---

[1]For purposes of the wrongful death action, the three defendants agreed to joint liability if they were found negligent.

16, the Hood Canal Bridge and State Route 101, between 11 p.m. and 5:30 a.m. He had been handling this route for approximately 5 years when, on October 7, 1985, at approximately 3:15 a.m., this fatal accident occurred. As he drove on SR 101 near Sequim, his truck left the pavement, continued along the dirt shoulder, and then dropped over a steep bank, finally coming to rest against a tree. The truck cab was crushed and Mr. Walker was pronounced dead by the first paramedic to reach the scene.

The accident occurred in the vicinity of a new intersection and left turn lane constructed by the defendants in connection with a marina project.[2] The road revisions were completed in June of 1985, about 4 months before Mr. Walker's death. As part of the project, SR 101 was widened by 12 feet on the north shoulder, causing Port Angeles-bound traffic to shift closer to the edge of a steep embankment. The construction also included a repaving project, which resulted in the obliteration of the fog line along the northern edge of the road. There were no warning signs or guardrails in the area around the intersection.

At trial, Mrs. Walker attempted to introduce a series of photographs of the above stretch of SR 101, taken in 1980, before the construction of the intersection. The trial court refused to admit the 1980 photographs, reasoning that the condition of the road 5 years before the accident was not relevant. However, the trial judge did allow the plaintiffs to introduce into evidence a videotape of the road as it appeared in 1984, as well as a series of still photographs which also depicted the state of the road in the months before the construction project began.

The plaintiff called a "human factors" expert, Dieter Jahns, to support her theory of the case — that Mr. Walker pulled off the road to let a car behind him pass, became disoriented by the absence of road markings, and drove over the bank. Jahns described how a typical motorist might react to various high-

---

[2] The Port of Port Angeles built the marina and contracted for the construction of the access road and intersection, but the State and Clallam County shared responsibility for maintaining the road.

way markings and environmental conditions. Although Jahns was not permitted to testify that the accident occurred because Mr. Walker pulled over to the right to let a car behind him pass, he did testify, without objection, that "the information that he [Walker] most probably processed was that he had sufficient room to pull . . . or just drift to the right." The defendants supported their theory of the case, that Mr. Walker lost control of the truck when he negligently fell asleep at the wheel, with the testimony of a sleep expert, Dr. William DeMent.

JURY INSTRUCTIONS

On appeal, Mrs. Walker assigns error to six of the trial court's jury instructions and to the court's failure to give four others. Generally, when reviewing a challenge to jury instructions, our inquiry is whether the trial court abused its discretion by giving or refusing to give certain instructions. *See Connor v. Skagit Corp.*, 30 Wn. App. 725, 731, 638 P.2d 115 (1981), *aff'd*, 99 Wn.2d 709, 664 P.2d 1208 (1983). Jury instructions are not erroneous if they "(1) permit each party to argue his [or her] theory of the case, (2) are not misleading, and (3) when read as a whole, properly inform the trier of fact of the applicable law." *Brown v. Spokane Cy. Fire Protec. Dist. 1*, 100 Wn.2d 188, 194, 668 P.2d 571 (1983). Even if an instruction is misleading and therefore erroneous, it will not require reversal unless prejudice is shown. Error is not prejudicial unless it affects or presumptively affects the outcome of the trial. *Thomas v. French*, 99 Wn.2d 95, 104, 659 P.2d 1097 (1983).

Mrs. Walker first challenges instruction 15, an intervening cause instruction based on WPI 12.05. She contends that it is incomplete and prejudicial due to the deletion of the final WPI paragraph dealing with the general field of danger.[3] However, the defendants did not raise the issue of

---

[3]The omitted portion of WPI 12.05 states:

"[It is not necessary that the sequence of events or the particular resultant [harm] [injury] [occurrence] be foreseeable. It is only necessary that the resultant [harm] [injury] [occurrence] fall within the general field of danger which the defendant should reasonably have anticipated.]"

general field of danger as a defense. Thus, the instruction was proper as given. *Brown v. Spokane Cy. Fire Protec. Dist. 1, supra.*

Mrs. Walker also objects to instructions 17, 18, 19 and 20, arguing that those instructions, especially when combined with instruction 21 (the definition of negligence per se), misstate the law and misled the jury as to the extent of Mr. Walker's negligence.[4]

■ The trial court did not err when it gave instruction 17 (persons using public roads have a duty to use them in a proper manner, exercising ordinary care), or instruction 18 (a governmental entity's duty to keep public roads safe extends only to those persons who use the roads in a proper manner). The two instructions do not unduly emphasize the defendant's contributory negligence theory. *See Samuelson v. Freeman*, 75 Wn.2d 894, 897, 454 P.2d 406 (1969) (in extreme cases where instructions are repetitive and overlapping, the combined instructions may be so "palpably unfair" as to constitute reversible error).

Mrs. Walker also asserts that the qualifying language of instruction 18 (government's duty to maintain roads extends only to "persons using them in a proper manner and exercising ordinary care for their own safety") was given in error. That clause was contained in WPI 140.01, second edition, but deleted in the third edition. According to the comments

---

[4]Instruction 17: "Persons using public roads have a duty to use them in a proper manner, exercising ordinary care for their own safety."

Instruction 18: "A government entity has a duty to exercise ordinary care in the construction design and maintenance of public roads to keep them in such condition that they are reasonably safe for ordinary travel by persons using them in a proper manner and exercising ordinary care for their own safety."

Instruction 19: "A state law provides that whenever a motor vehicle is being operated on a roadway or shoulder adjacent thereto during the times of "darkness" the driver shall use headlights directed high enough and of sufficient intensity to reveal persons and vehicles at a safe distance in advance of the vehicle."

Instruction 20: "A state law provides that only where signs are in place to define an improved driving-on-the-shoulder zone may a driver of a slow moving vehicle drive onto and along the shoulder and then only for the purpose of allowing overtaking vehicles to pass."

Instruction 21: "The violation of a statute is negligence as a matter of law. Such negligence has the same effect as any other negligence."

contained in the third edition, the qualifying clause was eliminated because of the enactment of comparative negligence (former RCW 4.22.010), which removed contributory negligence as a bar to recovery. The editors explain:

> The qualification formerly in this instruction that public highways must be reasonably safe for "persons using them in a proper manner and exercising ordinary care for their own safety" was based on Argus v. Peter Kiewit Son's [*sic*] Co., 49 Wn.2d 853, 307 P.2d 261 (1957). The committee [Washington Supreme Court Committee on Jury Instructions] believes that this qualification no longer applies since contributory negligence is not now a bar to recovery.

6 Wash. Prac., *WPI* 140.01 comment, at 631-32 (3d ed. 1989). The comment to WPI 140.01.01, third edition, further explains the committee's reasoning:

> Inclusion of the language required by *Argus* in an instruction defining a municipality's duty might give the erroneous impression that no duty at all is owed by the municipality if the plaintiff was not exercising ordinary care. . . . The committee believes that under principles of comparative negligence the qualification set forth in *Argus* describes a duty of the plaintiff rather than a limitation on the duty owed by the municipality.

■ As this case was filed after the enactment of the comparative negligence legislation, Mrs. Walker contends that it was error to qualify the municipalities' duty. However, this court does not agree with the WPI comment. In *McKee v. Edmonds*, 54 Wn. App. 265, 773 P.2d 434 (1989) decided *after* the adoption of comparative negligence, Division One of this court affirmed the dismissal of an action against the City brought by a jaywalker who was injured when she tripped in a pothole. *McKee*, at 267. The court reiterated that the language, "persons using such ways *in a proper manner* and *exercising due care for their own safety*", qualifies the duty of the municipality and that failure to so instruct is reversible error. *McKee v. Edmonds, supra* (citing *Argus v. Peter Kiewit Sons' Co.*, 49 Wn.2d 853, 859, 307 P.2d 261 (1957)). We concur with this reasoning. Instruction 18 was not given in error.

■ However, Mrs. Walker's objections to instructions 19 and 20 are well taken. Instruction 19 informs the jury that

a motorist must use his or her headlights after dark. Although the instruction correctly states the law, there was no evidence that Mr. Walker was not using his headlights or that the headlights on the truck were defective. This lack of evidence, in conjunction with the negligence per se instruction, had the potential to mislead the jury as to the extent of Mr. Walker's comparative negligence.

█ Instruction 20 is a misstatement of the law. It states that it is illegal for a driver to pull over to allow an overtaking vehicle to pass unless there are signs defining an improved driving-on-the-shoulder zone. RCW 46.61.428, the statute upon which the instruction was based, authorizes local governments to place signs along portions of 2-lane highways where drivers may safely drive on improved shoulders to allow overtaking vehicles to pass. The statute does not state that drivers may pull over *only* in such designated areas or that it is a crime to pull off the road onto a shoulder where there is no turnoff sign. It was error to give instruction 20.

█ Error is prejudicial if it affects, or presumptively affects, the outcome of the trial. Here, even if the jury accepted plaintiff's theory that Mr. Walker pulled off the road to allow a following vehicle to pass and then became disoriented by the lack of any signs, railings, or fog line to guide him, the jury might still have concluded that he was contributorily negligent because he "illegally" drove onto the shoulder. This, combined with the confusion regarding Mr. Walker's headlights may well have influenced the jury's finding that Mr. Walker was 70 percent contributorily negligent. Where we cannot be certain whether erroneous instructions affected the outcome of the trial, the error is prejudicial and, therefore, reversible. *See Thomas v. French, supra.*

Mrs. Walker also assigns error to the trial court's refusal to give the following proposed instructions: a "claims" instruction, listing her theories of liability; an instruction telling the jury to "decide the case of each defendant separately as if it were a separate lawsuit"; an instruction regarding inherently dangerous road conditions; and an instruction

dealing with liability based on contract. She also challenges the trial court's failure to use her proposed verdict form.

■ The trial court did not err in refusing to give Mrs. Walker's proposed instructions. The subject matters involved were adequately addressed in instructions which were given. A trial court has no obligation to give superfluous or irrelevant instructions. *See State v. Hoffman*, 116 Wn.2d 51, 111, 804 P.2d 577 (1991); *Binkley v. Tacoma*, 114 Wn.2d 373, 389, 787 P.2d 1366 (1990). Defendants' "claims" instruction was sufficient to permit plaintiff to argue her theory of the case. The defendants agreed to be jointly liable in this case so there was no reason to instruct the jury to consider each defendant separately. Furthermore, as the jury found the defendants negligent, we see no prejudice in failing to give the proposed instructions regarding inherently dangerous conditions or liability arising out of contract.

Mrs. Walker requested a special verdict form which would have required the jury to make a separate finding of negligence with respect to each defendant. However, the defendants in this case agreed to be jointly liable for purposes of the wrongful death action. Nothing would have been gained by the use of the special verdict form.

EXCLUSION OF EXPERT'S OPINION

■ Mrs. Walker also challenges the trial court ruling excluding the opinion of her expert, Dieter Jahns, as to why Mr. Walker pulled off the road. We allow the trial court considerable discretion in deciding whether to admit expert opinion evidence and will not disturb the trial court's ruling absent a showing of abuse of discretion. *State v. Swan*, 114 Wn.2d 613, 655, 790 P.2d 610 (1990), *cert. denied*, 498 U.S. 1046 (1991). Plaintiff failed to make such a showing.

ER 702, which governs the admissibility of expert testimony, provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The admissibility of expert testimony under ER 702 depends on whether "(1) the witness qualifies as an expert, (2) the opinion is based upon an explanatory theory generally accepted in the scientific community, and (3) the expert testimony would be helpful to the trier of fact." *State v. Allery*, 101 Wn.2d 591, 596, 682 P.2d 312 (1984).

■ Here, the jury heard Jahn's testimony as to the motivations and habits of drivers in general and Jahn's opinion as to Walker's probable thought process as Walker drifted to the right side of the road. The only statement excluded was Jahn's opinion as to the actual cause of the accident: that Walker veered to the right to let the vehicle behind him pass. The trial court, in deciding whether to admit an expert's opinion, must consider whether the issue is such that an expert could "express a reasonable probability rather than mere conjecture or speculation." 5A K. Tegland, Wash. Prac., *Evidence* § 291, at 396 (3d ed. 1989), *quoted in Davidson v. Municipality of Metro Seattle*, 43 Wn. App. 569, 571, 719 P.2d 569, *review denied*, 106 Wn.2d 1099 (1986). There was no evidence regarding the decedent's actual thought processes at the time his truck moved to the shoulder. Thus, the trial court did not err in concluding that Jahn's opinion was based on conjecture and, therefore, inadmissible.

### ADMISSION OF DEFENSE EXPERT'S OPINION

Mrs. Walker also assigns error to the admission of the opinion testimony of defense expert Dr. William DeMent. After considering a number of hypothetical facts and combining those facts with his expertise on sleep and sleep habits, Dr. DeMent opined that a driver in Mr. Walker's situation "fell asleep and that would be the cause of the accident." Mrs. Walker contends that the above testimony is too speculative and, like Jahn's ultimate conclusion, should not have been admitted. Again, we are not persuaded that the trial court abused its discretion with respect to the admission of expert opinion evidence.

Initially we note that we need not consider the above argument because appellant's assignment of error was not

supported by proper argument and authority. *See Howell v. Spokane & Inland Empire Blood Bank*, 114 Wn.2d 42, 46, 785 P.2d 815 (1990) (assignments of error not supported with legal arguments need not be considered on appeal). Although Mrs. Walker did develop her argument in her reply brief, in our view, the original deficiency is not cured.

Nonetheless, we will briefly address the issue of Dr. DeMent's testimony. Again, a trial court has the discretion to admit expert opinion testimony so long as the expert is able to base his or her opinion on probability, rather than speculation or conjecture. *Davidson v. Municipality of Metro Seattle*, 43 Wn. App. 569, 719 P.2d 569, *review denied*, 106 Wn.2d 1009 (1986).

Dr. DeMent's testimony meets the above test. Dr. DeMent presented an opinion based upon an explanatory theory. Although his opinion depended upon the existence of certain other factors, it did not require that he speculate as to the decedent's thought processes at the time the truck left its lane of travel. The trial court did not abuse its discretion in admitting Dr. DeMent's expert opinion. Thus we find no error.

### EXCLUSION OF PHOTOS

Mrs. Walker also challenges the court's decision to exclude, on relevancy grounds, the series of photos showing the road in 1980. Again, our review is for abuse of discretion and we find no error. *See State v. Rice*, 48 Wn. App. 7, 737 P.2d 726 (1987) (the determination of the relevancy of a particular piece of evidence will not be reversed absent a manifest abuse of discretion).

The relevancy of evidence is evaluated by two criteria: (1) its tendency to prove or disprove a fact and (2) whether that fact is one of consequence in the context of other facts and the applicable substantive law. Relevancy depends upon the circumstances of each case and the relationship of the facts to the ultimate issue. Evidence that either directly or circumstantially tends to establish any element of a claim or defense is generally relevant. *State v. Rice, supra.*

Here, plaintiff sought to introduce the 1980 photos to show that the defendants changed the road prior to the accident in 1985. Arguably, the photos also provide some circumstantial evidence of Mr. Walker's state of mind regarding the design of the road in 1985. Plaintiff contended that Mr. Walker acted reasonably, according to his understanding of the road's configuration. Although the reasonableness of Mr. Walker's conduct is a fact of consequence, evidence of the road's appearance 5 years prior to the accident has little probative value, especially in light of the fact that the decedent drove the road many times between the initiation of the marina project and his death. Moreover, the trial court admitted numerous exhibits showing the changes in the road from 1984 to the time of the accident — evidence giving the plaintiff ample opportunity to argue her theory of the case. The trial court did not abuse its discretion when it found the 1980 photos irrelevant.

As plaintiff was prejudiced by the use of erroneous jury instructions, a new trial is necessary. Plaintiff asks that the new trial be limited to the issue of Mr. Walker's contributory negligence. However, there is a general presumption in favor of a new trial on all issues. *See Bauman v. Complita*, 66 Wn.2d 496, 502, 403 P.2d 347 (1965). Further, in this case the issues of defendants' liability and Mr. Walker's fault are so intertwined that a jury could not fairly decide one in isolation without danger of injustice to the other. *Cramer v. Bock*, 21 Wn.2d 13, 17, 149 P.2d 525 (1944). Therefore we reverse the judgment of the trial court and remand for a new trial on both liability and comparative negligence issues.

PETRICH, C.J., and ALEXANDER, J., concur.

After modification, further reconsideration denied October 23, 1992.

Reversed and remanded at 121 Wn.2d 214 (1993).