[No. 18131-6-III.   Division Three.   May 18, 2000.]

GARY GRAHAM, ET AL., *Appellants*, v. CONCORD
CONSTRUCTION, INC., ET AL., *Respondents*.

*J.J. Sandlin* of *Sandlin Law Firm*, for appellants.

*James B. Drewelow* of *Carlson, Drewelow & McMahon*;
and *Jennifer K. Sands*, for respondents.

SWEENEY, J. — The dispositive question here is whether federal or state law provides immunity from claims by a third party for a private contractor who builds a fish screen according to United States Bureau of Reclamation specifications. We conclude it does not because there is a sufficient showing of negligence in the performance of the contract to avoid summary judgment. We, therefore, reverse the trial judge's conclusion to the contrary and remand for trial on the merits.

## FACTS

Concord Construction, Inc., successfully bid to construct a fish screen for the United States Bureau of Reclamation. The screen prevents fish from entering an irrigation canal that adjoins and draws water from Toppenish Creek. The Bureau detailed the project specifications in an extensive contract solicitation with drawings. The solicitation included flow records for Toppenish Creek. The project required a dry construction site. This, in turn, required that Concord drain a section of the canal. The Bureau located the fish screen about 10 yards from where the canal joined Toppenish Creek.

The Bureau specifications required that Concord maintain the natural flow of Toppenish Creek and the irrigation canal during irrigation season. The specifications also obligated the contractor to undertake whatever studies were necessary to "assess the reliability and accuracy of the information" provided by the government. The contract required Bureau approval for the Toppenish Creek diversion and water removal. But it also left the contractor with "full responsibility for the adequacy of the diversion and protective works."

To drain the fish screen site, Concord planned to place dams upstream and downstream in the canal to temporarily

block the flow. It obtained permits from the Washington State Department of Fisheries and the Yakama Indian Nation. The permits detailed guidelines for blocking the flow of the canal. The Bureau incorporated those permits into the contract.

Concord expected to construct the fish screen during the irrigation season when the canal was full. Concord's first diversion and drainage plan would have directed water through a south bypass channel. This south bypass channel was eliminated, however, after construction was delayed past the irrigation season.

In late October 1994, representatives from Concord, the Washington State Department of Fisheries, the Yakama Indian Nation, the Wapato Irrigation Project, and local ranchers met to review and discuss Concord's diversion and drainage plan. At that meeting, a Wapato Irrigation Project representative asked that the plan be modified to allow Wapato to repair a gate which controlled the flow of Toppenish Creek. It proposed to place a cofferdam across Toppenish Creek. Wapato would then divert the water flow from the creek into a north bypass channel that connected with the creek downstream from the cofferdam. Everyone accepted Wapato's proposal. Concord revised its plan to reflect the changes. The Bureau also approved the plan after imposing additional conditions for drainage and runoff control.

The Wapato Irrigation Project constructed the north bypass channel for Toppenish Creek. Concord then built the fish screen and the cofferdam on Toppenish Creek.

In January 1995, during construction, severe rainstorms increased Toppenish Creek's flow. Graham Ranch is located upstream from the Toppenish Creek cofferdam and fish screen project. On January 31, Gary Graham, the owner of Graham Ranch, told Concord to remove the cofferdams. Concord refused. The water flows in Toppenish Creek breached the north bank of the creek, flooding Graham Ranch.

Graham sued the Bureau. It settled its claim with the

Bureau and dismissed the federal suit. But in doing so, Graham expressly reserved "all rights which accrue to them under law to prosecute the civil claims" against Concord.

Graham then sued Concord. The superior court granted Concord's motion for summary judgment, concluding that Concord was immune from liability because it had performed its work in accordance with the Bureau's control.

## DISCUSSION
### STANDARD OF REVIEW

Our review is de novo. We ask the same question the trial court asks—Is there sufficient evidence to support a genuine issue of material fact? We consider the evidence and reasonable inferences in a light most favorable to Graham. *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). A material fact is one upon which the outcome of the litigation depends. *Doe v. Department of Transp.*, 85 Wn. App. 143, 147, 931 P.2d 196 (1997).

Questions of negligence and proximate cause are generally reserved for the trier of fact. *Ruff v. King County*, 125 Wn.2d 697, 703, 887 P.2d 886 (1995).

### GOVERNMENT CONTRACTOR IMMUNITY DOCTRINE

■ Graham argues that Concord has independent or concurrent duties to protect Graham Ranch from harm, especially after Mr. Graham told Concord of the flooding hazard. RCW 4.24.115; *First Church of Christ Scientist v. City of Seattle*, 92 Wn. App. 229, 231, 964 P.2d 374 (1998). Graham notes that diversion of the creek was left to Concord's discretion. It argues that Concord improperly diverted the creek. And this resulted in the flooding.

Concord claims it is immune from liability because of the government contractor immunity doctrine. *Boyle v. United Techs. Corp.*, 487 U.S. 500, 503-12, 108 S. Ct. 2510, 101 L. Ed. 2d 442 (1988); *Simons v. Tri-State Constr. Co.*, 33 Wn. App. 315, 655 P.2d 703 (1982). It first argues that it complied with the Bureau's plans, specifications, and

permits. Second, the Bureau's contract and permits did not require Concord to conduct hydrological studies. Third, all work done by Concord was done following the Bureau's daily inspections and with the Bureau's express approval.

If the contractor performs in accordance with government plans and specifications and under the government's supervision, the contractor, as an agent of the government, is not liable for damages. *Simons*, 33 Wn. App. at 322. This immunity, however, "presupposes the absence of negligence[.]" *Argus v. Peter Kiewit Sons' Co.*, 49 Wn.2d 853, 855-56, 307 P.2d 261 (1957) (citing *Muskatell v. Queen City Constr. Co.*, 3 Wn.2d 200, 202, 100 P.2d 380 (1940)).

A contractor must reasonably anticipate dangerous conditions and guard against them. *Argus*, 49 Wn.2d at 856. Even if the contractor acts under government direction and in accordance with the contract plans and specifications, the contractor is liable for its negligent omissions. *Palin v. General Constr. Co.*, 47 Wn.2d 246, 251, 287 P.2d 325 (1955). And generally, whether the contractor is negligent "in the performance of the work under its contract present[s] a factual question to be determined by the jury." *Argus*, 49 Wn.2d at 856.

In *Palin*, a contractor agreed with King County to remove an oil storage tank. The contractor acted in accordance with the contract and under the county's direction. One night the contractor failed, however, to lock a valve. Someone opened the valve. Two hundred thousand gallons of oil escaped. The Supreme Court held that the government contractor immunity doctrine did not apply because the failure to lock the valve constituted "negligence in the performance of the work." *Palin*, 47 Wn.2d at 251 (emphasis omitted).

Here, Graham claims Concord failed to provide adequate diversion of Toppenish Creek by way of a south bypass channel. It relies on the testimony of an expert, Gene Thompson. Mr. Thompson opines that Concord was negligent because it failed to independently study the flow records of Toppenish Creek. He believes that Concord should have evaluated the weather and river stages which could

be expected during construction. Mr. Thompson further opines that Concord should have adequately diverted the creek to maintain the natural flow, even during high flood conditions. These opinions raise genuine issues of material fact. *Argus*, 49 Wn.2d at 855-56; *Palin*, 47 Wn.2d at 251. If Concord negligently performed the contract, then it is not covered by the contractor immunity doctrine.

### WASHINGTON PRODUCTS LIABILITY ACT

■ Concord also argues that it is immune under the Washington products liability act (WPLA). RCW 7.72-.050(2). Concord claims that it is a "manufacturer" of the fish screen. RCW 7.72.010(2). And the fish screen is a "product" because it was comprised of component parts. RCW 7.72.010(3).

A contractor who manufacturers a product in compliance with government contract specifications cannot be liable under the WPLA. RCW 7.72.050(2); *In re Estate of Foster*, 55 Wn. App. 545, 779 P.2d 272 (1989). A "product" is any object possessing intrinsic value, capable of delivery either as an assembled whole or as a component part or parts, and produced for introduction into trade or commerce and construction. Engineering services are not products for purposes of the WPLA. *Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1*, 124 Wn.2d 816, 822 n.1, 881 P.2d 986 (1994).

The contract here required Concord's services to construct a fish screen facility. The Bureau provided detailed specifications for a construction project. The fish screen was not produced for introduction into trade or commerce. This was not a contract for a "product" but rather a contract for construction services. The WPLA does not, therefore, apply.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.

KATO, J., and MUNSON, J. PRO TEM., concur.