[No. 22665. Department One. December 2, 1930.]

ERNEST AXLAND, *Respondent*, v. PACIFIC HEATING COMPANY *et al., Appellants.*[1]

[1]Reported in 293 Pac. 466.

*W. H. Abel,* for appellant Pacific Heating Co.

*John C. Hogan,* for appellant Fairmont Hotel Co.

*J. E. Stewart,* for respondent.

PARKER, J.—The plaintiff Axland commenced this action in the superior court for Grays Harbor county seeking recovery of damages for injury to his stock of merchandise from escaping steam from the heating system furnishing steam heat to the building in which his store is located, resulting, as he claims, from the concurring negligence of the defendant heating company, which company furnished the steam, and the defendant hotel company, which company was a hotel tenant occupying the larger portion of the building. A trial in the superior court, sitting without a jury, resulted in findings and judgment awarding to Axland damages in the sum of $1,602 against both the heating company and the hotel company, from which they have each separately appealed to this court.

The controlling facts, we think, may be fairly summarized as follows: The hotel building in question, situated in Aberdeen, is a large three-story building, with four storerooms on the ground floor, fronting on one of the business streets of the city, and also a furnace room fronting the alley in the rear of the building and immediately back of the storeroom occupied by Axland. The hotel company, at the time in question, occupied, as a tenant of the owner of the building, all of the rooms therein on the second and third floors and one of the storerooms on the ground floor as its lobby and office. The storeroom occupied by Axland was separated from the furnace room by a partition without any built-in opening in it, but of such construction as to permit steam to readily penetrate it. In this storeroom Axland carried on his retail men's clothing and furnishing business.

The heating company has for many years been maintaining a steam heating plant situated some two or three blocks distant from the building, from which plant it has furnished steam heat through its pipes laid under the surface of the streets and alleys of the city to its numerous customers.

Up to sometime in the year 1925, the whole of the hotel building was heated by its own steam plant situated in the furnace room. At that time the then tenant of the hotel portion of the building was obligated by the terms of the lease to furnish heat to the three ground floor storerooms, the tenants of which were tenants of the owner of the building and not tenants of, or under any contractual relation with, the hotel tenant. This furnishing of heat to the tenants of the storerooms was but a part of the rent obligation of the hotel tenant to the owner of the building.

In 1925 the hotel tenant concluded to abandon the operation of the heating plant in the furnace room and to arrange with the heating company to furnish steam for the heating of the building, including the storerooms, as the hotel tenant was obligated to the owner to do. Such an arrangement was accordingly made between the hotel tenant and the heating company.

One of the heating company's pipe lines ran along the alley under the surface about two feet distant from the rear wall of the building; that is, about two feet distant from the rear wall of the furnace room of the building. In making connection with the steam pipe system of the building, the heating company ran a four-inch pipe from a connection with its main pipe in the alley to the concrete wall of the building, then cut a perpendicular groove in the outer face of the wall for a distance of some six feet up to a boarded-up window

opening in the wall, and continued the four-inch pipe up this groove and attached to its top a four-inch angle valve for the purpose of letting the steam into the pipes of the building.

The perpendicular pipe and the valve were largely in the wall, the rim of the wheel of the valve projecting outside the outer surface of the wall. There was then screwed into the opening of the valve, projecting towards the inside of the furnace room, a cast iron bushing for the purpose of reducing that four-inch opening of the valve to a two-and-one-half inch opening. There was then screwed into the reduced opening of the bushing a pipe of that size, which extended into near the middle of the furnace room, where it was connected with the pipes of the building for distributing steam throughout the building, including the storerooms.

All of this equipment was furnished and put in place by the heating company sometime in the year 1925. Some charge seems to have been made therefor by the heating company against the then hotel tenant for this installation. The evidence, however, is not at all satisfactory as to this; that is, as to exactly for what the charge was made, nor as to what extent this installed equipment remained the equipment of the heating company or became the equipment of the hotel tenant. Succeeding hotel tenants seem to have held under the lease, during its stated term, requiring the named tenant therein to furnish heat to the storerooms. However, that lease expired on May 1, 1928. Since then the succeeding hotel tenants have all been mere month to month tenants, each orally agreeing with the owner, the landlord, to pay to the heating company the whole amount owing to it from time to time for the furnishing of heat to the whole of the building, including the storerooms.

The record seems to render it plain that, since the connection with the heating company's steam pipe lines was made, the whole building has at all times been heated therefrom. This in any event is true since the expiration of the lease above noticed. The hotel company has, during the whole time of its tenancy, been a tenant of the hotel portion of the building as a mere month to month tenant, under an oral agreement to pay the heating company for the steam heat, for heating the whole of the building, as a part of its rent obligation to the owner.

On March 9, 1927, the threads in the two-and-one-half inch opening of the angle valve into which the pipe leading therefrom into the furnace room had been screwed, gave way, allowing steam to escape into the furnace room and through the partition into the store-room occupied by Axland, causing serious injury to his stock of goods. The amount of damage so suffered by him is not questioned. The pipe was screwed into the two-and-one-half inch opening of the angle valve only about one-quarter of an inch, and had remained so attached to the angle valve since it was screwed therein in 1925. This was very poor workmanship, as was abundantly shown by testimony of experienced and expert witnesses. The trial court found in part:

"... that the breaking of the connection between the pipe or nipple to the said valve was due entirely to the giving way of the cast bushing; the pipe or nipple being entirely undamaged; that the said cast bushing was a part of said valve, as much so as any other part of the valve; its sole purpose being a reduction of the valve from a four-inch to a two-and-one-half inch one; ... that the plaintiff never at any time made any use of said installation or any part thereof, and never at any time had access thereto; . . . that said connection was not a strong one in the first place, due to faulty construction, the nipple not having been screwed into the bushing to a sufficient

depth; that this defect was more or less latent, but could have been discovered through inspection by one skilled in work of that kind; . . . that steam, at the pressure often existing at the point which gave way, is a dangerous agency, and proper care was not exercised by the defendants to see that steam was not permitted to escape; that the defendant Pacific Heating Company was guilty of negligence in the manner in which the installation was originally made, and both defendants have been guilty of negligence through their failure to maintain a proper system of inspection.''

These findings, we think, are sustained by the evidence, except as to negligence of the hotel company.

It is first contended in behalf of appellant heating company that, even if its installing of the valve and attachments were defective in material or workmanship, the heating company should be absolved from liability to the then hotel tenant and all other tenants in the building, because that installing was done for and accepted by the then hotel tenant and thereafter used by that tenant and subsequent tenants without complaint as to material or workmanship of such installing; this upon the theory that the heating company made such installing as an independent contractor for the then tenant. There is invoked in support of this contention the general rule that:

''. . . an independent contractor is not liable for injuries to a third person occurring after the contractor has completed the work and turned it over to the owner or employer and the same has been accepted by him, though the injury result from the contractor's failure to properly carry out his contract . . .'' 14 R. C. L. 107;

recognized as a correct general rule by our decision in *Hanson v. Blackwell Motor Co.*, 143 Wash. 547, 255 Pac. 939.

We are unable to see that the heating company can be absolved from liability to Axland under the circum-

stances attending its making the installation, here appearing. It seems to us that the trial court was warranted in regarding the heating company's installing of the valve and attachments, which included the cast iron bushing and the screwing of the two-and-one-half inch pipe therein, as being made by the heating company for itself, to the end that it might thereby deliver to the hotel tenant with which it then dealt steam for the heating of the building. If the heating company had, by a contract independent of its heating contract, installed or done some work upon the steam pipe system wholly within the building and clearly beyond that which was directly incident to the delivery of steam into the building, and such installing of work had proved defective and resulted in damage to some tenant in the building, the rule here invoked might be applicable.

We think the heating company was not only charged with the proper and safe installing of the valve and appliances in question, but was also charged with the duty of continuing inspection and care of the valve and its immediate attachments incident to its continuing to deliver steam into the pipes in the building, and for failure in such duty the heating company became liable for damages resulting therefrom to any of the tenants of the building. True, the heating company's heating contract was not with any tenant of the building other than the hotel company; but we think the heating company's liability to an injured tenant of the building, from escaping steam resulting from improper installing and maintenance of the valve and attachments here in question, would be a tort liability, and therefore is not dependent upon a contractual relation between the heating company and such injured tenant.

It is further contended in behalf of the appellant heating company that in any event there was no

sufficient proof of negligence on its part to sustain the judgment. The evidence seems to us to warrant the conclusion, arrived at by the trial court, that the nipple, that is, the threaded end of the two-and-one-half inch pipe, was screwed into the bushing of the valve only about one-quarter of an inch; that this was unsafe and poor workmanship; that a proper inspection by the heating company, while it was delivering steam through the valve and the bushing, would have shown that the pipe was not sufficiently screwed into the bushing to constitute a safe and workmanlike connection; and that this improper maintenance of the connection was the negligence causing the steam to escape. True, that connection had held for a period of some three years, but that is not at all conclusive that it was so manifestly sufficient and safe that the heating company was absolved from taking notice of the insufficient distance, only about one-quarter of an inch, the threaded end of the pipe was screwed into the bushing; when, as the testimony shows, good workmanship required that it be screwed into the bushing at least three-quarters of an inch. Had the connection been so made, it seems little short of certain that the threads of the bushing would not have given way. We are of the opinion that we should not conclude that the evidence fails to preponderate in support of the judgment as against the heating company.

It is contended in behalf of appellant hotel company that it in no event is liable in damages to Axland, because it was under no contract duty whatever to him. We have seen that the hotel company's contract duty was only to the owner, its landlord, to pay for the heating of the whole building as a part of its month to month rent obligation. Manifestly, this was its whole duty. It had no contract duty with the owner, its landlord, to furnish heat to Axland's store-

room. Its duty went no further than to pay for the heating service of the whole building; and this, in view of the source from which the heat came and had come for a long time prior to this accident and was expected to come in the future, meant nothing more than to pay for such service to the heating company. We are of the opinion that the hotel company is not liable to Axland for the damage suffered by him.

The judgment, in so far as it awards recovery in favor of Axland and against the heating company, is affirmed. The judgment, in so far as it awards recovery in favor of Axland and against the hotel company, is reversed. Axland is awarded costs against the heating company. The hotel company is awarded costs against Axland.

MITCHELL, C. J., MAIN, TOLMAN, and HOLCOMB, JJ., concur.

[1]Reported in 293 Pac. 464.