[No. 35086. *En Banc.* June 23, 1960.]

WILLIAM L. ANDREWS *et al., Respondents,* v. BRUNO DEL GUZZI *et al., Appellants,* RALPH E. SCHMITT *et al., Defendants.*[1]

[1]Reported in 353 P. (2d) 422.

*Johnston & Raley*, for appellants.

*Conniff & Taylor* and *Severyns & Moffett*, for respondents.

DONWORTH, J.—Respondents initiated this action to recover damages for personal injuries allegedly sustained from inhaling carbon monoxide gas which escaped into the house in which they were tenants. The dwelling was owned by the Assembly of God church in Forks, Washington. Respondent husband was pastor of the church.

The action was brought against appellants Del Guzzi as the contractors, who constructed the house, and also against defendants Ralph E. Schmitt and wife, as subcontractors, who installed a propane gas furnace in the house.

The complaint contains two causes of action. The first is in behalf of William L. Andrews and prays for damages in the amount of $75,269.22. The second is in behalf of Irene Andrews, his wife, and prays for damages in the amount of $5,028.25.

It is alleged that prior to November 19, 1952, the Assembly of God church contracted with appellants for the construction of a house to be occupied by its pastor, and that the heating system was installed by defendant Ralph E. Schmitt as subcontractor for appellants.

It is further alleged that the house was completed in November, 1952, and that respondents moved into the house in June, 1953. Paragraph V of the first cause of action reads:

"That the furnace that was installed by the Defendants was a gas furnace and burns as fuel propane gas, which created vapors that are dangerous to human life. That during the night of October 6, 1954, and the early morning hours of October 7, 1954, gas escaped from said furnace into the house and into the bedroom where the Plaintiffs [respondents] were sleeping. That as a result thereof, and of the inhalation of said gas by the Plaintiffs, they became very ill. . . ."

It is then alleged that the cause of the escaping gas was the negligent installation of the furnace, and that appellants and their subcontractor, Schmitt, were negligent in the following particulars:

1. Failure to provide for proper venting of the furnace so as to permit exhaust to escape into the atmosphere.

2. Failure to properly connect the furnace to the chimney.

3. Failure to provide a chimney of sufficient height to permit the exhaust gases to be carried away from the house.

4. Failure to install a cap on the chimney to control air currents descending into the chimney, which prevented exhaust gases from being carried off into the atmosphere.

The complaint alleges as an additional item of negligence the failure to provide a separate flue for the furnace. However, this item was not relied upon at the trial.

It is finally alleged that the above-described acts of negligence created a condition inherently and imminently dangerous to human life and that respondents' injuries were directly and proximately caused by such condition.

Appellants, by answer, admitted that they were the contractors who constructed the house, that the defendants

Schmitt installed the propane gas furnace, and denied all the other material allegations in the complaint.

On the issues thus framed, the case came on for trial before the court sitting with a jury.

At the close of the evidence, appellants challenged its sufficiency and moved for a dismissal. The challenge and motion were denied.

The jury returned a verdict in favor of respondent William Andrews and against appellants in the amount of $4,200, and in favor of respondent Irene Andrews and against appellants in the amount of $800. Since no verdict was rendered against the defendants Schmitt, judgment was entered dismissing the complaint against them and they were awarded their costs.

Thereafter, appellants moved for judgment notwithstanding the verdict, which was denied. The court then entered a judgment upon the verdict, from which this appeal is prosecuted.

The two assignments of error are: (1) The trial court erred in denying appellants' motion for dismissal at the close of the evidence; (2) the trial court erred in denying appellants' motion for judgment notwithstanding the verdict.

Both assignments of error involve the same principles of law and will therefore be discussed together.

Appellants first contend that there is no evidence or reasonable inference from the evidence sufficient to sustain any claim of negligence.

■ The evidence clearly establishes the fact that defendants Schmitt had nothing to do with the construction of the chimney. Since the jury apparently found no negligence as to defendants Schmitt, its verdict must be deemed a finding in favor of appellants as to all allegations of negligence which pertain to the actual installation of the propane gas furnace. *Bickelhaupt v. Inland Motor Freight*, 191 Wash. 467, 71 P. (2d) 403 (1937). Thus, the only allegations of negligence remaining for the jury's consideration were items three and four, *supra*, to wit, the failure to provide a

chimney of sufficient height, and the failure to install a cap on the chimney.

 The chimney in question was nineteen and one-eighth inches higher than the roof peak of the house. Respondents contended that the chimney should have been at least twenty-four inches above the roof peak. Respondents' expert witness, Verle Brown, testified that, when gas fuel is being used in a dwelling, the chimney should be a *minimum* of twenty-four inches above the roof peak if the chimney is horizontally within ten feet of the roof peak, or else the chimney should be equipped with a vent cap; otherwise, he said, there would be a tendency for downdrafts to form which would cause improper venting. Respondents also read into evidence the following recommendation of the American Gas Association, which is quoted in appellants' brief, as follows:

"It is usual experience that a flue or vent extended *at least* two feet above flat roofs or two feet above the highest part of wall parapets and peak roofs within thirty feet will be *reasonably free* from down drafts." (Italics ours.)

The chimney in this case was located within three feet of the roof peak.

Appellants' expert witness, Robert Brown, explained the function of the American Gas Association as follows:

"Well, the A.G.A., American Gas Association, is a group of interested people that are banded together to improve the usage of gas combustion equipment. It embraces a complete field of all interested parties including the insurance companies, the Health Division of the United States Government, the appliance manufacturers, the gas companies and all of the other people that are interested in giving *safe equipment* out into the field for proper application and *fundamentally for protection of the public.*" (Italics ours.)

From the evidence above mentioned, the jury could have reasonably inferred that the chimney in this case was not properly constructed so as to be free from downdrafts.

There was substantial evidence from which the jury could have found that downdrafts in the chimney would

prevent the gas fumes from escaping into the atmosphere and, instead, would permit them to pour down through the draft diverter for the furnace and ultimately escape into the house.

Furthermore, it was undisputed that Forks, Washington, where this house was built, is subject to frequent high wind conditions.

The question here presented is whether appellants exercised reasonable care to prevent downdrafts from occurring in this chimney. On the conflicting evidence presented, we think this question was properly one for the jury to determine.

It is next contended that there is neither evidence nor any reasonable inference from evidence that any act of negligence on the part of appellants was a proximate cause of respondents' injuries.

The rule to be applied to respondents' evidence is stated in *St. Germain v. Potlatch Lbr. Co.*, 76 Wash. 102, 135 Pac. 804 (1913), as follows:

" . . . It is sufficient if his evidence affords room for men of reasonable minds to conclude that there is a *greater probability* that the accident causing the injury happened in such a way as to fix liability upon the person charged with such liability, than it is that it happened in a way for which the person so charged would not be liable. . . ." (Italics ours.)

However, appellants take the position that respondents' evidence does not satisfy this test.

Both parties presented expert witnesses on the issue of causation. Respondents' expert witness, Verle Brown, when asked on direct examination how the products of combustion got into the house, testified:

"Well, in my opinion they weren't being properly vented; the products of combustion did then come out of the draft diverter and through the fissures which were present in the cold air ducts and entered the system that way and then would have been transported through the cold air ducts or in the case of the blower running through the hot air ducts into the living space."

The witness then gave his opinion as to what was improper about the venting and stated:

"In my opinion the most important consideration is the fact that the vent was less than what I would consider the minimum requirement above the roof, which is twenty-four inches. It was less than that. . . ."

Appellants argue that it was more probable that the gas which entered the house came from the hot-water heater which was installed by the owner of the house and which was vented into the same chimney as the furnace.

We think appellants' theory of probable proximate cause was pretty much discounted by the undisputed evidence that it was perfectly proper to vent the hot-water heater into the same chimney the furnace was vented into, since the two appliances were not located on the same level. Furthermore, it appeared that very little hot water had been used on the night in question, and the testimony, on cross-examination of appellants' own expert witness, Robert Brown, reveals that the hot-water heater, under these circumstances, would put out relatively little carbon monoxide.

Appellants argue further that products of combustion could have traveled up the chimney from the furnace to the hot-water heater vent, and then traversed through this vent into the hot-water heater draft diverter, and thence escaped into the house.

This theory was not urged at the trial. In fact, appellants' own witness, Robert Brown, testified, on direct examination, that the installation of the gas hot-water heater would not have caused a problem to develop with relation to the furnace. He further testified that the only reasonable source of the carbon monoxide in this case, *other than the furnace itself,* was from the hot-water heater due to its coming on to compensate for temperature losses. He did not testify that the hot-water heater was the more *reasonable* or *probable* source, as appellants infer in their brief.

The question of proximate cause was for the jury, which was faced with the problem of passing upon the credibility of expert witnesses whose testimony was, in some respects, conflicting. From its verdict, it is apparent that the jury

accepted the opinion of respondents' expert witness as to the cause of the carbon monoxide escaping into the living quarters.

▪ It is finally urged by appellants that, in any event, they are not liable in this case because of the well-settled rule stated in 65 C. J. S. 613, as follows:

"It is a well-established general rule that, where the work of an independent contractor is completed, turned over to, and accepted by, the owner, the contractor is not liable to third persons for damages or injuries subsequently suffered by reason of the condition of the work, even though he was negligent in carrying out the contract, . . ."

Appellants do not ignore the well-recognized exception to this rule that the contractor is liable when the product of his work is inherently or imminently dangerous. This court expressly recognized the exception in *Wilton v. Spokane,* 73 Wash. 619, 132 Pac. 404 (1913). Appellants take the position that their negligence did not create an imminently dangerous condition.

▪ This court has previously recognized the fact that propane gas is inherently dangerous because of its explosive characteristics. *Reeder v. Western Gas & Power Co.,* 42 Wn. (2d) 542, 256 P. (2d) 825 (1953). It has also been recognized by the supreme court of California that such gas is dangerous from the standpoint of carbon monoxide poisoning. *Dow v. Holly Mfg. Co.,* 49 Cal. (2d) 720, 321 P. (2d) 736 (1958). Thus, in constructing a chimney to serve a furnace using propane gas as fuel, appellants were dealing with a dangerous product. It would naturally follow that any defect in the construction of the chimney which would allow carbon monoxide gas to escape into the living quarters of respondents' house would constitute an inherently or imminently dangerous condition. As previously stated, whether such a defect existed and, if so, whether it proximately caused the injuries here complained of were questions for the jury.

▪ We think instructions No. 8 and No. 9, which were not excepted to, adequately covered all the ultimate issues raised by this appeal.

Instruction No. 8: "You are instructed that a contractor and a subcontractor are not liable to a tenant of the owner of a building for negligence if the building has been completed, turned over to the owner and accepted by the owner, unless the act of negligence by the contractor or the subcontractor was imminently dangerous to the lives or safety of others."

Instruction No. 9: "Before you can return a verdict in favor of either plaintiff and against any of the defendants you must find: (1) that such defendant was guilty of negligence in one or more of the particulars alleged by the plaintiffs and (2) that such negligence created a condition imminently dangerous to human life, (3) that such defendant knew, or in the exercise of reasonable care should have known, that he was creating such imminently dangerous condition, and (4) that such negligence was the proximate cause of injury and damage to such plaintiff.

"Unless you find each of the above elements are established by a fair preponderance of the evidence, you will return a verdict in favor of each defendant."

Since the controversial factual issues in this case were submitted to the jury by instructions which were admittedly correct, the verdict in favor of respondents must stand. The trial court did not err in denying appellants' motion for judgment notwithstanding the verdict.

The judgment of the trial court is affirmed.

FINLEY, ROSELLINI, FOSTER, and HUNTER, JJ., concur.

OTT, J. (dissenting)—If the dwelling which the tenant leased proved to be untenantable, to the tenant's damage, the landlord might be liable in damages upon the theory of breach of contract. However, if the tenant elects, as in this proceeding, to exonerate his landlord from liability, and seeks to recover his loss from the contractor who built his landlord's dwelling, the contractor's liability, if any, to the tenant must arise out of tort or breach of contract.

It is conceded, in the instant case, that there is no contractual liability because no privity of contract was shown. In my opinion, the contractor owes no tort liability to the tenant.

The contractor in this proceeding built the dwelling according to plans and specifications approved by the owner. The chimney extended nineteen and one-half inches above the roof, as the plans and specifications provided. *The owner claims no negligence on the part of the contractor.* If the chimney was four and one-half inches too short, it was a condition which was obvious to the owner. The owner accepted the dwelling with full knowledge of this obvious condition, and thereby waived any objection arising out of the height of the chimney.

The basis of this action is negligence. The tenant must prove that the contractor was negligent in performing his building contract and that the height of the chimney he constructed *did* create an imminently dangerous condition. The evidence established that the contractor was a builder of many years' experience; that he had constructed many houses in this area, and that his expert building practices were those approved and adopted by other experts who had been and were building homes in that vicinity. As such building expert, he is required to exercise due care that his structure will be reasonably tenantable and usable for the purposes for which the building is constructed. He is not expected to build a structure to withstand the impacts of acts of God or of unforeseeable or unexpected circumstances. Every owner and every tenant assumes the risk of the happening of such circumstances.

The general rule is that acceptance by the owner exonerates a contractor from liability for injury to third persons. The majority recognize this general rule to be the law of this state, but hold that the exception to the rule is here applicable, in that the contractor created a condition which was imminently or inherently dangerous, and that the contractor is liable because the tenant proved damage as a proximate result of this condition. I do not agree that the respondents' evidence brought them within the exception.

Respondents' expert witness testified as follows:

"Q. Now, if the stack were lower than your recommended minimum would that down drafting occur all of the time?

A. Probably not. Q. Could it occur very rarely? A. Yes, it would be a situation where it would be entirely dependent upon atmospheric pressures, wind velocities, temperatures—the temperature of the flue gas, the temperature of the air. It is one of these things that conditions have to be just at the right balance; the temperature, velocities, all have to be in balance to produce a down draft."

He also testified that the furnace "Could have operated for ten years before the first failure." With reference to the danger resulting from the escape of carbon monoxide gas into the dwelling, he testified:

"Q. It would take a long time, wouldn't it, or an awful lot of continuous down draft for a quantity of carbon monoxide to build up from the ceiling down? A. Under optimum burning conditions, yes. Q. Well, let's say under less than optimum? A. Well, then that would depend on how much less. Q. But again it would not surprise you if those conditions were obtainable or existed only once in four or five, or two or three years? A. It could exist only once in a lifetime, yes, sir."

Was this evidence sufficient to establish that the chimney was imminently or inherently dangerous? There was no proof that the same condition would not have resulted had the chimney been four and one-half inches higher. Respondents' expert merely said that a downdraft would have been less likely to have occurred had the chimney been higher. Viewing the evidence most favorably for respondents, the chance of a downdraft occurring was *very remote*. It depended upon the happenstance of the coincidence of precise atmospheric conditions. The downdraft was not the dangerous condition. The dangerous condition was the escape of carbon monoxide gas into the dwelling, and that condition was not dangerous without still another circumstance which prevented the gas from escaping and allowed it to accumulate and remain in the dwelling.

The court found, as a matter of law, that the condition created was not inherently dangerous. It submitted to the jury only the question of whether or not an imminently dangerous condition existed.

Webster's New International Dictionary defines the word

"imminent" as "Threatening to occur immediately; near at hand; impending." Giving respondents' evidence its most favorable inference, it, in my opinion, falls far short of proving a condition "threatening to occur immediately" or "impending."

Whether the height of the chimney contributed toward the creation of a dangerous condition admittedly depended upon the simultaneous occurrence of intervening unforeseeable circumstances. The possibility that the height of the chimney caused or created any part of the dangerous condition is so remote and speculative that it cannot be said the chimney, as constructed, was either imminently or inherently dangerous.

Items which qualify as exceptions to the general rule have been limited by the courts to those having known dangerous propensities, such as dynamite, gunpowder, dynamite caps, and firearms. The majority cite no authority, nor have I been able to find any, for extending the exception to the general rule of negligence to encompass facts such as are here presented. To impute negligence to a contractor under these facts would require every contractor to guarantee his structure against acts of God and against all future unforeseeable circumstances. This is an unjust and unwarranted extension of liability under the law of negligence.

In my opinion, the court erred in refusing to dismiss this case at the close of the evidence, and the judgment should be reversed.

WEAVER, C. J., MALLERY, and HILL, JJ., concur with OTT, J.

---

October 4, 1960. Petition for rehearing denied.