[No. 22276-4-III.   Division Three.   December 28, 2004.]

HEIDI GARZA, ET AL., *Appellants*, v. McCAIN FOODS, INC., *Defendant*, THE HORSLEY COMPANY, ET AL., *Respondents*.

*David B. Trujillo* (of *Law Offices of David B. Trujillo*), for appellants.

*David L. Martin, Frank A. Cornelius, Jr.,* and *Alison H. Killibrew* (of *Lee Smart Cook Martin & Patterson, P.S., Inc.*) and *Jennifer D. Gaffaney* (of *Quane Smith, L.L.P.*) ( *Michael L. Haman, of counsel*), for respondents.

¶1 SCHULTHEIS, J. — This is a personal injury suit. Our disposition turns on whether two contractors are insulated from liability by Washington's version of the completion and acceptance doctrine. That doctrine insulates a contractor from negligence claims if its work is completed and accepted by the owner, and done strictly according to the owner's specifications. We conclude that the doctrine does not apply here because a question of fact remains as to whether the construction resulted in an inherently or imminently dangerous condition. Such a condition is excepted from the completion and acceptance rule. We also conclude that the results of the contract here (for electrical and mechanical construction services) produced no product to be introduced into the stream of commerce. Therefore Heidi and Ruben Garza have not stated a viable cause of action under chapter 7.72 RCW (product liability act). We therefore reverse the trial court's summary dismissal of the Garzas' causes of action for negligence but affirm its dismissal of their product liability claim.

## FACTS

¶2 The Horsley Company assembled and installed a conveyor system in the Chef Reddy plant in the early 1970s. Horsley bought the component parts necessary to assemble and install the conveyor and installed it according to the manufacturer's specifications. Around 1988, Chef Reddy sold its plant to McCain Foods, Inc.

¶3 McCain renovated its production line sometime after 1989. This included changes to the conveyor system. McCain contracted with PCE Enterprises, Inc., for the electrical work. PCE did the electrical work according to detailed electrical drawings by McCain's engineer. The contract between PCE and McCain required that PCE implement designs prepared by Perkings Engineering and D. Hittle Engineering. That design did not provide for an easily accessible shutoff switch.

¶4 PCE finished its work in February 1991. Horsley then moved, shortened, and reconfigured some equipment, including the conveyor, and installed some new equipment.

¶5 Heidi Garza worked at McCain. On August 12, 1996, she tried to remove a long strip of packing tape hanging from an overhead inclined conveyor belt. She reached to pull the tape off the frame. The active conveyer belt pulled her arm into roller guides and injured her. The conveyor was not equipped with either safety guards or a shutoff switch. The absence of each contributed to the injury.

¶6 Ms. Garza and her husband sued PCE for negligence. Against Horsley they claimed negligence as well as strict liability (Washington's product liability act) for defective design and failure to provide adequate warnings or instructions. PCE and Horsley moved for summary judgment. They argued that their work had been completed and accepted by the owner, McCain.[1] They were, therefore, insulated from liability as a matter of law. The trial judge agreed and dismissed the complaint.

## DISCUSSION

¶7 The Garzas concede that the work done by these defendants falls within the scope of the completion and acceptance rule. But they contend that one or both of the exceptions to that rule apply. Or at least they have raised a question of fact as to whether the exceptions apply.

¶8 We review a summary dismissal de novo. *Hadley v. Maxwell*, 144 Wn.2d 306, 310, 27 P.3d 600 (2001). In doing so we engage in the same inquiry as the trial court. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

¶9 The Garzas' negligence claims against PCE and Horsley must be based on the common law duty of reasonable care to foreseeable users not to create foreseeable risk

---

[1] McCain is not a party to this appeal. It was initially named as a defendant, but it was dismissed while this matter was litigated in federal court on removal. It was no longer a party when this summary judgment motion was heard on remand.

of harm. *King v. City of Seattle*, 84 Wn.2d 239, 248, 525 P.2d 228 (1974). Here, injury from an industrial conveyor belt without pinch point guards or an accessible shutoff switch is sufficiently foreseeable to impose a general duty of reasonable care on PCE and Horsley. The question is whether despite that they are insulated from liability by the completion and acceptance rule.

COMPLETION AND ACCEPTANCE DOCTRINE

■■ ¶10 Washington subscribes to the completion and acceptance rule. Once a contractor's work has been completed and accepted by the owner " 'the contractor is not liable to third persons for damages or injuries subsequently suffered by reason of the condition of the work, even though he was negligent in carrying out the contract.' " *Andrews v. Del Guzzi*, 56 Wn.2d 381, 388, 353 P.2d 422 (1960) (quoting 65 C.J.S. 613); *First Church of Christ Scientist v. City of Seattle*, 92 Wn. App. 229, 231, 964 P.2d 374 (1998).

¶11 The work done by these contractors was done in accordance with the owner's plans and specifications and was accepted by the owner, McCain Foods.

¶12 The Garzas rely on the two recognized exceptions to the completion and acceptance rule. First, contractors remain liable for injuries to third parties if their work results in an inherently or imminently dangerous condition. *Andrews*, 56 Wn.2d at 388. However, the term "inherently dangerous" is not restricted to things that are imminently dangerous all the time, like poisons or explosives, as Horsley and PCE suggest.

¶13 In the context of the completion and acceptance doctrine, the generally accepted definition is that framed by Judge Benjamin Cardozo for defective products. A thing is inherently dangerous if the nature and quality of it is reasonably certain "to place life and limb in peril." *MacPherson v. Buick Motor Co.*, 217 N.Y. 382, 389, 111 N.E.

1050 (1916).[2] Whether the result of the work is imminently or inherently dangerous is then a question of fact generally calling for expert testimony. *Andrews*, 56 Wn.2d at 386-87. So is the question of whether the condition was the proximate cause of the injuries. *Id.* at 388-89. A conveyor is not inherently dangerous when a stop/reverse switch is provided at the pinch point. *Standard Conveyor Co. v. Scott*, 221 F.2d 460, 461 (8th Cir. 1955) (applying Missouri law). But that switch is missing here.

¶14 The court in *Andrews* approved the following jury instructions:

"You are instructed that a contractor [is] not liable to a tenant of the owner of a building for negligence if the building has been completed, turned over to the owner and accepted by the owner, unless the act of negligence by the contractor or the subcontractor was imminently dangerous to the lives or safety of others."

" . . . Before you can return a verdict . . . against any of the defendants you must find: (1) that such defendant was guilty of negligence in one or more of the particulars alleged by the plaintiffs and (2) that such negligence created a condition imminently dangerous to human life, (3) that such defendant knew, or in the exercise of reasonable care should have known, that he was creating such imminently dangerous condition, and (4) that such negligence was the proximate cause of injury and damage to such plaintiff.

"Unless you find each of the above elements are established by a fair preponderance of the evidence, you will return a verdict in favor of each defendant."

*Andrews*, 56 Wn.2d at 389.

¶15 Division One of this court in *Tennyson v. Plum Creek Timber Co.* acknowledged both *Andrews* and *Axland*,[3] but concluded nonetheless that only explosives or the like are

---

[2] *See also Standard Conveyor Co. v. Scott*, 221 F.2d 460, 462 (8th Cir. 1955); *Brent v. Unicol, Inc.*, 969 P.2d 627, 630 (Alaska 1998) (citing *MacPherson*, 217 N.Y. 382); *Nichols v. Corntassel*, 258 Mont. 173, 175, 852 P.2d 583 (1993); *Thompson v. Coats*, 274 Or. 477, 484, 547 P.2d 92 (1976) (recognizing that the exceptions have effectively swallowed the completed work rule).

[3] *Axland v. Pac. Heating Co.*, 159 Wash. 401, 293 P. 466 (1930).

inherently dangerous for the purposes of this exception. *Tennyson v. Plum Creek Timber Co.*, 73 Wn. App. 550, 558, 872 P.2d 524 (1994). In *Davis v. State*, Division Two of this court disagreed with this conclusion in *Tennyson* and held that dangerousness is a question of fact. *Davis v. State*, 102 Wn. App. 177, 193, 6 P.3d 1191 (2000), *aff'd*, 144 Wn.2d 612, 30 P.3d 460 (2001). We agree. "Inherently or imminently dangerous" is not limited to those items traditionally thought of as having dangerous propensities like dynamite, gun powder, or dynamite caps. A jury might well find that a mechanical conveyor without a shutoff switch or guards at pinch points is inherently or imminently dangerous. It should be permitted to do just that.

¶16 Where the danger to others is great, the party with the ability to remove the obvious danger should do so. The responsible party cannot delegate the duty to another, here the owner, and thereby avoid liability for negligence. *Massey v. Tube Art Display, Inc.*, 15 Wn. App. 782, 790, 551 P.2d 1387 (1976). Other examples illustrate the point. All contractors have a nondelegable specific duty to ensure compliance with all the Washington Industrial Safety and Health Act of 1973 (WISHA), chapter 49.17 RCW, regulations at the jobsite. *Kamla v. Space Needle Corp.*, 147 Wn.2d 114, 122, 52 P.3d 472 (2002). This duty is imposed as a matter of policy " 'to further the purposes of WISHA to assure safe and healthful working conditions for every person working in Washington.' " *Id.* (quoting *Stute v. P.B.M.C., Inc.*, 114 Wn.2d 454, 464, 788 P.2d 545 (1990)).

¶17 These contractors owed the Garzas a common law duty of reasonable care. That duty included constructing and assembling a conveyor and its various electrical components that was not imminently or inherently dangerous. Whether the construction of this particular conveyor was a breach of that duty, and whether the breach proximately caused the Garzas' injuries are questions of fact for a jury and, again, generally the subject of expert testimony. *See, e.g., Andrews*, 56 Wn.2d at 386-87.

¶18 A second exception to the completion and acceptance rule requires that the negligent construction work fall outside the contract. *First Church*, 92 Wn. App. at 234-35. Since the first exception applies, we need not address the second.

PRODUCT LIABILITY

¶19 Finally, the Garzas claim a cause of action against Horsley under the product liability act, chapter 7.72 RCW.

> A product manufacturer is subject to liability to a claimant if the claimant's harm was proximately caused by the negligence of the manufacturer in that the product was not reasonably safe as designed or not reasonably safe because adequate warnings or instructions were not provided.

RCW 7.72.030(1).

¶20 The legislature preempted common-law product liability with the Washington product liability act. The act imposes strict liability on any manufacturer of a defective product for resulting injuries. *Parkins v. Van Doren Sales, Inc.*, 45 Wn. App. 19, 23, 724 P.2d 389 (1986); *McKenna v. Harrison Mem'l Hosp.*, 92 Wn. App. 119, 960 P.2d 486 (1998).

¶21 The product liability act applies to any claim or action brought for harm caused by the manufacture, production, construction, design, assembly, or installation of a product. Covered claims include but are not limited to those previously based on strict liability, negligence, breach of a duty to warn, or any other substantive legal theory. RCW 7.72.010(4).

¶22 A "product" is an object "produced for introduction into trade or commerce." RCW 7.72.010(3). Construction services are not products for purposes of the product liability act. *Graham v. Concord Constr., Inc.*, 100 Wn. App. 851, 856, 999 P.2d 1264 (2000); *Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1*, 124 Wn.2d 816, 822 n.1, 881 P.2d 986 (1994). The contract in *Graham* was for services to construct a fish screen facility. The fish screen was not

produced for introduction into trade or commerce. This court held the contract was not, therefore, one for a "product" but for construction services. The Washington product liability act did not apply. *Graham*, 100 Wn. App. at 856. Likewise, this is not a product liability case.

LATE AFFIDAVIT

¶23 Finally, the Garzas take issue with the court's refusal to accept and consider affidavits they filed in opposition to Horsley's and PCE's motions for summary judgment—affidavits they filed late. The decision to admit or exclude evidence for consideration on summary judgment lies within the trial court's sound discretion. *Int'l Ultimate, Inc. v. St. Paul Fire & Marine Ins. Co.*, 122 Wn. App. 736, 744, 87 P.3d 774, *review denied*, 101 P.3d 109 (2004).

¶24 CR 56(c) requires that a motion for summary judgment be "filed and served not later than 28 calendar days before the hearing." Although the trial court may accept affidavits anytime prior to issuing its final order on summary judgment, whether to accept or reject untimely filed affidavits lies within the trial court's discretion. *Brown v. Peoples Mortgage Co.*, 48 Wn. App. 554, 559, 739 P.2d 1188 (1987).

¶25 Here, the court accepted the Garzas' late filing of a brief but struck the attached affidavits as they applied to PCE.

¶26 The Garzas argue that one of the affidavits was part of the court file from 1999 when the case was in federal court. While the other is a new affidavit, it was merely a compilation of matters in affidavits previously filed. The court held that the affidavits were "new evidence" as against PCE. Report of Proceedings (RP) at 15. The Garzas argue that PCE was a part of the lawsuit long before the summary judgment, and PCE should be cognizant of what is contained in the court file. But PCE was not a party to the federal lawsuit, and the events described in the late affidavit occurred well before the action was filed. *Brown*, 48 Wn. App. at 560.

¶27 The court offered to revisit the ruling: "I don't think there's any prejudice to any party. If it looks like that might be the case then I'll again revisit and permit a response from PCE." RP at 19. The Garzas did not accept the court's invitation.

¶28 Further, there is nothing in the affidavits that is of any use to the Garzas against PCE. Any error is harmless. *Gay v. Hansen*, 130 Wash. 107, 109, 226 P. 271 (1924); *Barber v. City of Seattle*, 182 Wash. 672, 678, 48 P.2d 234 (1935).

¶29 The court did not abuse its discretion in refusing to consider the Garzas' affidavits against PCE.

## CONCLUSION

¶30 We reverse the dismissal of the Garzas' negligence claims but affirm the summary dismissal of the product liability claim against Horsley.

SWEENEY, A.C.J., and KURTZ, J., concur.

After modification, further reconsideration denied April 21, 2005.