150 P.3d 545 (2007)
Tami DAVIS, as Personal Representative of the Estate of Alan Davis, deceased; and as Trustee for Tami Davis and Melissa Davis for the Wrongful Death of their Father, Alan Davis, Appellants,
v.
BAUGH INDUSTRIAL CONTRACTORS, INC., a Washington corporation; Selpeco Resources, Inc. and Selpeco Resources, Inc.A Knight Piesold Company, Washington corporations; Tucci & Sons, Inc., a Washington corporation; E.J. Rody & Sons, Inc., a Washington corporation, Gray & Osborne, Inc., a Washington corporation; Taiheiyo Cement Corporation and Taiheiyo Cement U.S.A., Inc., foreign corporations; Weyerhaeuser Company and Weyerhaeuser Real Estate Company, Washington corporations; and "Unknown Business Entities I-X," jointly and severally, Respondents.
No. 76696-7.
Supreme Court of Washington, En Banc.
Argued November 9, 2005.
Decided January 18, 2007.
Philip Albert Talmadge, Emmelyn Hart-Biberfeld, Talmadge Law Group PLLC, Tukwila, Scott Frederick Lundberg, Seattle, for Appellants.
Sean Edward Michael Moore, Francis Stanley Floyd, Amber L. Pearce, Floyd & *546 Pflueger PS, Frank Joseph Steinmark, Chism Thiel McCafferty Campbell & Steinmar, Tracy A. Duany, Mullin Law Group PLLC, William Walter Spencer, Murray Dunham & Murray, Randall Robert Steichen, Dorsey & Whitney LLP, Dave Arnold Matison, Seattle, Brendan Jay Peters, Bainbridge Island, Shellie McGaughey, Gulliford McGaughey & Dunlap PLLC, Bellevue, for Respondents.
Bryan Patrick Harnetiaux, Debra Leigh Williams Stephens, Spokane, for Amicus Curiae Washington State Trial Lawyers Association Foundation.
CHAMBERS, J.
¶ 1 We are asked whether the common law doctrine of completion and acceptance, which shields contractors from liability for negligent work after that work has been completed and accepted by the property owner, bars this suit against Baugh Industrial Contractors, Inc., for negligent construction of a pipeline. Finding that this doctrine is outmoded, incorrect, and harmful, we now join the 37 states that have abandoned it. We reverse the superior court order granting summary judgment and remand for further proceedings.

FACTS AND PROCEDURAL HISTORY
¶ 2 On October 12, 1992, Baugh entered into a contract to build a network of subterranean pipes for a processing facility belonging to Glacier Northwest. In turn, Baugh hired E.J. Rody & Sons, Inc. (Rody) to install the on site utilities and underground piping for the facility. In the course of its work, Rody assembled and installed high density polyethylene pipes and buried the piping underground. Rody had exclusive control over the installation. The project was substantially completed in April 1997 and Glacier accepted the work. Shortly thereafter, Glacier began operating the facility.
¶ 3 In December 2000, after observing that a pond had formed, Glacier suspected a leak in one of the underground pipes. Alan Davis was the foreman of the crew assigned by Glacier to excavate the area and find the leak. While the pipeline was still covered with several feet of dirt, Davis entered the excavated hole to try to pinpoint the leak. Tragically, several cement blocks, weighing between 1,500 and 1,800 pounds each, fell into the hole when a nearby wall collapsed. One of the blocks crushed Davis' chest and pinned him to the ground. Davis later died of his injuries. Evidence suggested that one of the high density polyethylene pipes, which had a useful life of up to 100 years, had failed. This might have been because of a gouge or dent in the pipe.
¶ 4 Tami Davis, Alan's daughter and personal representative of his estate, filed this negligence suit against Baugh among others. The trial court granted summary judgment for Baugh on the ground that the completion and acceptance doctrine relieved Baugh of liability for negligence after the work was completed and accepted by the property owner. The trial court also struck portions of a declaration of Davis' expert. On direct appeal from the superior court, Davis argues that the trial court erred. We agree and reverse.

STANDARD OF REVIEW
¶ 5 Trial court rulings in conjunction with a motion for summary judgment are reviewed de novo. Folsom v. Burger King, 135 Wash.2d 658, 663, 958 P.2d 301 (1998).

ANALYSIS
¶ 6 Under the completion and acceptance doctrine, once an independent contractor finishes work on a project and the work has been accepted by the owner, the contractor is no longer liable for injuries to third parties, even if the work was negligently performed. Historically, after completion and acceptance, the risk of liability for the project belonged solely to the property owner. This court has not addressed this doctrine in over 40 years and, in the meantime, 37 states have rejected it. See Emmanuel S. Tipon, Annotation, Modern Status of Rules Regarding Tort Liability of Building or Construction Contractor for Injury or Damage to Third Person Occurring After Completion and Acceptance of Work; "Completed *547 and Accepted" Rule, 74 A.L.R.5th 523, 557-61 (1999); Peters v. Forster, 804 N.E.2d 736, 741 (Ind.2004). Under the modern, Restatement approach, a builder or construction contractor is liable for injury or damage to a third person as a result of negligent work, even after completion and acceptance of that work, when it was reasonably foreseeable that a third person would be injured due to that negligence. Restatement (Second) of Torts §§ 385, 394, 396 (1965).[1]
¶ 7 We join the vast majority of our sister states and abandon the ancient completion and acceptance doctrine. See In re Rights to Waters of Stranger Creek, 77 Wash.2d 649, 653, 466 P.2d 508 (1970). We find it does not accord with currently accepted principles of liability because it was grounded in the long abandoned privity rule that a negligent builder or seller of an article was liable to no one but the purchaser. See, e.g., Thornton v. Dow, 60 Wash. 622, 635-36, 111 P. 899 (1910) (explaining that a contractor is liable only under the contract); MacPherson v. Buick Motor Co., 217 N.Y. 382, 397, 111 N.E. 1050 (1916). This approach to analyzing liability was first rejected in MacPherson. There, Judge (and later Justice) Benjamin N. Cardozo's watershed opinion explained that:
[w]e have put aside the notion that the duty to safeguard life and limb, when the consequences of negligence may be foreseen, grows out of contract and nothing else. We have put the source of the obligation where it ought to be. We have put its source in the law.
MacPherson, 217 N.Y. at 390, 111 N.E. 1050. Cardozo has prevailed, and the privity requirement in tort law has been abandoned not just in Washington but in all United States jurisdictions in the decades since MacPherson. See Stuart v. Coldwell Banker Commercial Group, Inc., 109 Wash.2d 406, 418, 745 P.2d 1284 (1987).
¶ 8 A second, oft-cited rationale for this doctrine is the theory that the owner's negligence in failing to remedy a dangerous condition upon the land is an intervening cause, which breaks the chain of causation and cuts off the contractor's liability. Thornton, 60 Wash. at 636, 111 P. 899. This rationale fails as well because Washington has long since abandoned this theory of proximate cause, sometimes called the "last wrongdoer" rule. See, e.g., Maltman v. Sauer, 84 Wash.2d 975, 982, 530 P.2d 254 (1975); Olson v. Gill Home Inv. Co., 58 Wash. 151, 157-58, 108 P. 140 (1910); see also Prosser and Keeton on the Law of Torts 304 (W. Page Keeton ed., 5th ed. 1984) ("The risk created by the defendant may include the intervention of the foreseeable negligence of others."). An intervening cause only breaks the chain of causation if the intervening event is so unexpected that it falls outside the realm of the reasonably foreseeable. Maltman, 84 Wash.2d at 982, 530 P.2d 254. Whether an intervening act breaks the chain of causation is a question for the trier of fact. Id.
¶ 9 The completion and acceptance doctrine is also grounded in the assumption that if owners of land inspect and accept the work, the owner should be responsible for any defects in that accepted work. See Pierce v. ALSC Architects, P.S., 270 Mont. 97, 890 P.2d 1254, 1262 (1995). While this assumption may have been well founded in the mists of history, it can no longer be justified. Id. Today, wood and metal have been replaced with laminates, composites, and aggregates. Glue has been replaced with molecularly altered adhesives. Wiring, plumbing, and other mechanical components are increasingly concealed in conduits or buried under the earth. In short, construction has become highly scientific and complex. Landowners increasingly hire contractors for *548 their expertise and a nonexpert landowner is often incapable of recognizing substandard performance.
¶ 10 Our legislature has adopted a statute of repose to provide predictability and limit contractor liability. RCW 4.16.310. The statute of repose terminates a negligence claim six years after "substantial completion of construction," even if the injury caused by contractor negligence has not yet occurred. Id. This statute of repose is a much clearer and simpler way to protect contractors from a long period of uncertainty.
¶ 11 The completion and acceptance doctrine is harmful because it is unnecessarily complex and difficult for courts to apply. The doctrine is nearly subsumed by the many exceptions which are necessary to avoid inequitable results. See Emmanuel S. Tipon, Annotation, Modern Status of Rules Regarding Tort Liability of Building or Construction Contractor for Injury or Damage to Third Person Occurring After Completion and Acceptance of Work: Exceptions to "Completed and Accepted" Rule, 70 A.L.R.5th 261, 282 (1999).
¶ 12 The doctrine is also harmful because it weakens the deterrent effect of tort law on negligent builders. By insulating contractors from liability, the completion and acceptance doctrine increases the public's exposure to injuries caused by negligent design and construction of improvements to real property and undermines the deterrent effect of tort law. Illinois long ago abandoned the doctrine specifically for this reason, stating that "[a]n underlying purpose of tort law is to provide for public safety through deterrence of negligent designers and builders. This purpose cannot be accomplished if these persons are insulated from liability simply by the act of delivery." Johnson v. Equip. Specialists, Inc., 58 Ill.App.3d 133, 15 Ill.Dec. 491, 373 N.E.2d 837, 843 (1978).
¶ 13 Accordingly, the common law completion and acceptance doctrine is hereby abandoned, and we join those courts who have adopted the Restatement approach.
¶ 14 We also hold that the trial court erred in striking portions of the declaration of Davis's expert, Michael Black. Black's declaration stated that the damaged pipe created a "hazardous condition" and a "zone of danger." Clerk's Papers at 692. The trial court struck these words, deeming them inadmissible legal conclusions because they are similar to one of the exceptions to the completion and acceptance doctrine, for conditions which are inherently or imminently dangerous. Cf. Andrews v. Del Guzzi, 56 Wash.2d 381, 388, 353 P.2d 422 (1960).
¶ 15 "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." ER 704. While Black's declaration may have embraced an ultimate fact under ER 704, his statement was not a legal conclusion. Expert testimony must assist the trier of fact. Mere legal conclusions, such that an act was or was not "negligent" or a "proximate cause" of an injury is not likely to be helpful to the meaningful evaluation of the facts, as it runs the risk of substituting the expert's judgment for the fact finder's. However, Washington law favors resolution of issues on the merits. It should not be fatal to a party's claim or defense that an expert used legal jargon, so long as an appropriate foundation for the conclusion can be gleaned from the testimony. Expert opinions that help establish the elements of negligence are admissible. ER 704; Coggle v. Snow, 56 Wash. App. 499, 784 P.2d 554 (1990); Everett v. Diamond, 30 Wash.App. 787, 638 P.2d 605 (1981). Given our holding today that the completion and acceptance doctrine is no longer the law of Washington, any similarity between the expert's use of language and the legal test is particularly insignificant. The trial court's decision striking portions of the expert's declaration is reversed.[2]

CONCLUSION
¶ 16 We conclude that the doctrine of completion and acceptance is outmoded, incorrect, *549 and harmful and join the modern majority of states that have abandoned it in favor of the Restatement approach. We reverse the superior court order granting summary judgment and remand for further proceedings in keeping with this holding.
WE CONCUR: CHARLES W. JOHNSON, SUSAN OWENS, BARBARA A. MADSEN, MARY E. FAIRHURST, RICHARD B. SANDERS, JJ.
J.M. JOHNSON, J. (dissenting).
¶ 17 Today the majority of this court recognizes a new rule for construction contracts that disregards our precedent. The court overturns this state's completion and acceptance rule for construction contracts and imposes a tort-based (and vague) foreseeability rule. The majority thereby rewrites terms of construction contracts created through private parties' negotiation and agreement.
¶ 18 The completion and acceptance rule is well supported in Washington common law, and our legislature has long declined to overturn that rule. I would affirm the trial court's summary judgment order and uphold the rule, continuing to allow free contracting by parties in this state. I dissent.

Analysis
The Completion and Acceptance Rule
¶ 19 Under the completion and acceptance rule, when an independent contractor finishes work on a project as directed by the owner and that work is inspected and accepted, the contractor is no longer liable for injuries to third parties. Andrews v. Del Guzzi, 56 Wash.2d 381, 388, 353 P.2d 422 (1960).
¶ 20 Washington has recognized the completion and acceptance rule for nearly a century. See, e.g., Donaldson v. Jones, 188 Wash. 46, 61 P.2d 1007 (1936); Thornton v. Dow, 60 Wash. 622, 111 P. 899 (1910). Recent Court of Appeals decisions evidence its continued employment in Washington. See, e.g., Garza v. McCain Foods, Inc., 124 Wash. App. 908, 913, 103 P.3d 848 (2004); First Church of Christ Scientist v. City of Seattle, 92 Wash.App. 229, 234, 964 P.2d 374 (1998).
¶ 21 Washington recognizes three exceptions to the completion and acceptance rule. The rule will not apply where: (1) the product of the work is inherently or imminently dangerous, Andrews, 56 Wash.2d at 388, 353 P.2d 422; (2) the alleged negligence is not part of the contract work but collateral to the contract, First Church, 92 Wash.App. at 234-35, 964 P.2d 374; or (3) the contractor has a continuing duty of inspection and care. Axland v. Pac. Heating Co., 159 Wash. 401, 407, 293 P. 466 (1930). These exceptions strengthen and support the rule.
Stare Decisis
¶ 22 Where this court is urged to abandon a long-established legal doctrine, the doctrine of stare decisis must be carefully considered. Stare decisis means, literally, "to stand by things decided." Black's Law Dictionary 1443 (8th ed.2004). It involves following rules laid down in previous judicial decisions unless they are found to contravene the ordinary principles of justice. See Windust v. Dep't of Labor & Indus., 52 Wash.2d 33, 35-36, 323 P.2d 241 (1958). Stare decisis assures that the same rules will apply to each citizen's case and that those rules may be known and relied upon.
¶ 23 Stare decisis furthers unity in the system of justice, assuring that decisions by courts of last resort are reliably binding. State v. Ray, 130 Wash.2d 673, 677, 926 P.2d 904 (1996); State ex rel. Wash. State Fin. Comm. v. Martin, 62 Wash.2d 645, 665, 384 P.2d 833 (1963).
¶ 24 We have recognized that without the stabilizing effect of stare decisis, "law could become subject to . . . the whims of current holders of judicial office." In re Rights to Waters of Stranger Creek, 77 Wash.2d 649, 653, 466 P.2d 508 (1970). When a rule of the common law has been upheld through generations, there is a great likelihood that such a rule is just and not merely the result of the subjective preferences of jurists. Stare decisis also serves the separation of powers, as the legislature may, in an appropriate area, change the law. If the legislature does not change the law, this further supports citizen reliance on the rule.
*550 ¶ 25 Continued adherence to precedent also reflects the important consideration that when a legal principle has been long established, it allows citizens to choose their courses of action with a reasonable expectation of future legal consequences. Crown Controls, Inc. v. Smiley, 110 Wash.2d 695, 704-05, 756 P.2d 717 (1988). See also Stephen Markman, Precedent: Tension Between Continuity in the Law and the Perpetuation of Wrong Decisions, 8 Tex. Rev. L. & Pol. 283, 284 (2004) (suggesting factors for determining when the presumption favoring precedent may be overcome, including "consideration of the reliance interests of the people, all of whom must carry out their personal and business affairs within the constraints of the legal system").
¶ 26 This court has repeatedly recognized that stare decisis "`requires a clear showing that an established rule is incorrect and harmful before it is abandoned.'" Riehl v. Foodmaker, Inc., 152 Wash.2d 138, 147, 94 P.3d 930 (2004) (quoting Stranger Creek, 77 Wash.2d at 653, 466 P.2d 508).
The Completion and Acceptance Rule is Reasonable
¶ 27 Applying the appropriate test, our completion and acceptance doctrine must be found reasonably supported and neither incorrect nor harmful.
¶ 28 A contracting party's acceptance of a construction project remains a significant event. Formal acceptance usually occurs only after inspection to assure the work has been performed as specified by the contract (as occurred in this case). The inspection by owners is also usually preceded by government agency inspection(s) (also done here). This court has recognized that the completion and acceptance rule finds one important basis in the owner's act of accepting the work after inspections as an intervening cause. Thornton, 60 Wash. at 636, 111 P. 899. See also First Church, 92 Wash.App. at 234, 964 P.2d 374 (acknowledging "the theory that acceptance of the work by the owner was an intervening cause relieving the contractor of liability"). Emphasis upon an owner's acceptance of the work accords with rights of parties to freely contract. See also Wash. Const. art. I, § 23 ("No . . . law impairing the obligations of contracts shall ever be passed.")
¶ 29 The completion and acceptance rule is a reasonable rule of construction contracting. This court has recognized important key distinctions between the underlying rationales of tort (e.g., product liability) and contract. In rejecting a tort theory of construction liabilities in Stuart v. Coldwell Banker Commercial Group, Inc., 109 Wash.2d 406, 745 P.2d 1284 (1987), this court observed that "[t]ort law is concerned with the obligations imposed by law, rather than by bargain." Id. at 420, 745 P.2d 1284. This court also noted that product liability is different because "it is appropriate that a duty be imposed on manufacturers to produce products that will not unreasonably endanger the safety and health of the public." Id.
¶ 30 "In contrast, contract law protects expectation interests, and provides an appropriate set of rules when an individual bargains for a product of particular quality or for a particular use." Id. In this case we are not dealing with products designed and mass marketed to enter public commerce but rather with a contracted structure to be used by the contracting owner for a particular purpose on a particular parcel of private property. Here, the pipe size, quality, depth, etc., were all specified in the contract, and the project was independently inspected by the owner before acceptance. If the distinction between tort law and contract law is clear within the area of products liability law, it is even more important in this case (and in all construction contract cases).
¶ 31 This court has noted that the different remedies offered in contract "encourage[] parties to negotiate toward the risk distribution that is desired or customary." Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1, 124 Wash.2d 816, 827, 881 P.2d 986 (1994). This reflects an intent to "preserve the incentive to adequately self-protect during the bargaining process." Id. This court further observed that "[i]f we held to the contrary, a party could bring a cause of action in tort to recover benefits they were unable to obtain in contractual negotiations." Id. Continued adherence to the completion *551 and acceptance doctrine is consistent with this commitment to allow voluntary contractual arrangement for risk allocation. The most obvious example is an owner choosing a cheaper construction product that will not last as long as a more expensive product and later suing in tort when the cheaper contracted project doesn't last.
¶ 32 The completion and acceptance rule is particularly important in the construction context. The construction industry is structured through contractual arrangements and specific design plans and specifications. The industry is further constrained by building codes, permits, and agency inspections. The completion and acceptance rule provides a public policy whereby contracting parties are held to the economic expectations defined in their contract documents.
¶ 33 One such economic expectation is that upon project completion, an owner accepts the work because it has met the requirements of the contract and applicable codes. The owner then assumes subsequent risks related to the project. The owner also maintains and controls subsequent use. The contract here is a good example. See Clerk's Papers (CP) at 309, et seq. The contract and specifications were detailed, providing for inspection by an independent company working for the ownerwith the owner retaining power to order changes before acceptance.
¶ 34 For reasons provided above, the completion and acceptance rule is reasonable and neither incorrect nor harmful. Those same reasons weigh heavily against Davis's alternative argument that this court should apply a "latent defect" exception to the rule.[1] A court can't find a "latent" defect here, where the owner had known the problem and had chosen to uncover the pipe well before the accident.
¶ 35 This and the other existing exceptions to our rule are simple and sensible, and strengthen the general rule. By overturning the long-standing rule, the majority imposes into the contracts of private parties terms that the parties themselves never agreed.
The Construction Statute of Repose Did Not Repeal the Rule
¶ 36 Contrary to the majority, I also find unpersuasive the argument that RCW 4.16.300.320 somehow repealed the completion and acceptance rule.[2]
¶ 37 The legislature is presumed to know the existing case law in the areas where it legislates. A statute is not construed in derogation of a common-law rule unless the legislature clearly expressed that purpose. Staats v. Brown, 139 Wash.2d 757, 766, 991 P.2d 615 (2000); Irwin v. Rogers, 91 Wash. 284, 287, 157 P. 690 (1916).
¶ 38 The statute of repose neither expressly nor impliedly supersedes the completion and acceptance rule. The statute was enacted nearly 40 years ago, and no Washington appellate court has held that it supersedes the rule. (Nor has the legislature indicated such understanding.)
¶ 39 Nor is there any conflict between the statute of repose and the completion and acceptance rule. They are distinct in effect. Actions may accrue within the statute of repose period (and within the statute of limitations) but still be barred by the completion and acceptance rule. Conversely, a claim based on an exception to the rule may be barred if the action did not accrue within the repose period.
*552 The Trial Court Properly Struck One Sentence from an Expert's Declaration
¶ 40 I would also uphold the trial court's striking a sentence from the expert's declaration. Under ER 704, expert witnesses may testify on "an ultimate issue to be decided by the trier of fact." When a trial court is presented with a question of law, it may disregard expert affidavits that contain conclusions of law. Eriks v. Denver, 118 Wash.2d 451, 458, 824 P.2d 1207 (1992).
¶ 41 In opposition to respondent's summary judgment motion, appellant's expert, Michael Black, P.E., testified in a written declaration that pipe damage and escaping water "created a hazardous condition and created a zone of danger." CP at 692. The trial court struck this sentence as a legal conclusion.
¶ 42 To the extent this case involves a question of whether the damaged fitting created an imminently or inherently dangerous condition, the expert's statement was a legal conclusion and properly stricken.

CONCLUSION
¶ 43 Today the majority overturns this state's historic completion and acceptance rule, contrary to stare decisis. By imposing a tort-based foreseeability rule in place of the long-standing rule, the majority disregards the line between tort and contract, which this courtand contracting partieshave previously understood. The majority thereby rewrites terms of private parties' contracts. I would affirm the trial court's summary judgment order based on the completion and acceptance rule and allow private contracting parties to continue to craft mutually beneficial and voluntary contract agreements for construction. This rewriting of our law will cost consumers in the long run. Therefore, I dissent.
WE CONCUR: GERRY L. ALEXANDER, C.J., and BOBBE J. BRIDGE, J.
NOTES
[1] Section 385 of the Restatement, "Persons Creating Artificial Conditions on Land on Behalf of Possessor: Physical Harm Caused After Work has been Accepted," provides:

One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to liability to others upon or outside of the land for physical harm caused to them by the dangerous character of the structure or condition after his work has been accepted by the possessor, under the same rules as those determining the liability of one who as manufacturer or independent contractor makes a chattel for the use of others.
The other cited sections describe the liability of a manufacturer of a chattel, with reference to additional sections of the Restatement (Second) of Torts (1965).
[2] Our opinion considers the tort claim for physical harm allegedly caused by negligent construction. Thus, we respectfully disagree with the dissent that this case implicates any questions regarding the proper line between torts and contracts, or to contract interpretation in any way. See, e.g., Stuart, 109 Wash.2d at 420, 745 P.2d 1284.
[1] I also reject appellant's other alternative argument that the imminently or inherently dangerous exception applies here to leaky pipes. Cases involving buried dynamite as "inherently dangerous," Wilton v. City of Spokane, 73 Wash. 619, 621, 132 P. 404 (1913), or explosive gas, Andrews, supra, are not comparable.
[2] RCW 4.16.310, the statute of repose, in pertinent part provides:

All claims or causes of action as set forth in RCW 4.16.300 shall accrue, and the applicable statute of limitation shall begin to run only during the period within six years after substantial completion of construction, or during the period within six years after the termination of the services enumerated in RCW 4.16.300, whichever is later. . . .
Whereas a statute of limitation bars plaintiff from bringing an accrued claim after a specified time, "[a] statute of repose terminates a right of action after a specific time, even if the injury has not yet occurred." Rice v. Dow Chem. Co., 124 Wash.2d 205, 212, 875 P.2d 1213 (1994).